393 Pa. Superior Ct. 1 (1990)
573 A.2d 1057
In the Matter of J.P., a Minor Adjudicated Dependent.
Appeal of S.P., Parent of the Above Named Minor Child.
Supreme Court of Pennsylvania.
Argued June 19, 1989.
Filed March 27, 1990.
*4 James E. Beveridge, Erie, for Children's Services, participating party.
Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.
TAMILIA, Judge:
This appeal was taken from the Order of the Juvenile Court of Erie County by S.P. who contests the finding of dependency of her child, J.P., now four years of age, and the temporary removal of J.P. from her custody.
On October 28, 1987, J.P. was admitted to Millcreek Community Hospital for a fracture to her left elbow. The explanation for this injury provided by appellant and a grandparent were inconsistent with the injury, as three different versions were offered as to the cause of the injury to the elbow. Doctor Anthony Ferretti, the examining physician at the hospital, believed J.P.'s injury was caused by twisting and/or pulling her arm. J.P. had been discharged from the hospital on October 28, 1987 at which time she had been treated for a fracture to her right elbow, and it was later that same day she was readmitted to the hospital for the fracture of her left elbow. The explanation for the fracture to J.P.'s right elbow appeared to be consistent *5 with the injury and was not included as a basis for the dependency petition subsequently filed by the Erie County Office of Children and Youth Services (CYS).
On October 30, 1987, J.P. was transferred to Great Lakes Rehabilitation Center with casts on both of her arms. She was discharged from the rehabilitation center on November 23, 1987, and placed in a foster home. On December 11, 1987, Erie County CYS filed a dependency petition pursuant to the Juvenile Act, 42 Pa.C.S. § 6301 et seq.[1]
Following placement in the foster home, the foster mother reported that she had great difficulty whenever attempting to change J.P.'s diaper. She exhibited running away behavior when forced to lay down, arching her back and attempting to roll away. When the foster mother tried to wash her vaginal area, J.P. would lock her legs together and arch her back. On December 17, 1987, Jonna was examined at Saint Vincent's Pediatric Clinic by Dr. Linda Fagenholtz. Dr. Fagenholtz gave J.P. a thorough examination, particularly in relation to the complaints of abnormal response to diaper changes and washing of the vaginal area. She found that J.P.'s vaginal opening was significantly larger than normal and determined that she had suffered on-going sexual abuse over a period of time. As a result of this finding, Erie County CYS filed an amended dependency petition which included sexual abuse.
On December 22, 1987, following a shelter hearing, an Order was entered by the court based upon the master's recommendation that J.P. be placed in a foster home pending further proceedings. On January 7, 1988 and January 15, 1988, an adjudication hearing was held with counsel representing the mother, the child and CYS. Following testimony by several witnesses on behalf of the appellant and CYS, the court adjudicated J.P. to be a dependent child. At a dispositional hearing held on February 5, 1988, testimony was received from the appellant, the appellant's grandparents and a case worker from CYS. The court entered an *6 Order placing J.P. in the custody of CYS, making findings of clear necessity to have the child placed outside of the home and providing directions for creation of a service plan, whereby the mother/appellant would be assisted in improving her parenting capacities and for dispositional reviews at appropriate times to determine whether or not a change in placement in favor of the child's grandparents would be in order. A review hearing was to take place in six months. It is from this Order that appeal was taken.
The issues raised on appeal by the mother may be summarized as follows. First, the court erred in determining the child was dependent and in need of placement; secondly, the court erred in refusing to consider placing the child in question with family members as opposed to foster care; and thirdly, whether counsel was ineffective in failing to present evidence in support of appellant to counter the allegation of sexual abuse inflicted on the child.
The statutory authority empowering the Juvenile Court judge to make a determination of dependency and thereafter to place the custody of the child with the CYS agency and/or foster home is found at section 6301(b) Purposes. Pursuant to that section, the Act construes its purpose to be to preserve the unity of the family whenever possible and to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the chapter; to achieve the purposes in a family environment whenever possible, separating the child from parents only when necessary for his/her welfare or in the interests of public safety; and to provide means for enforcement of the chapter in which the parties are assured a fair hearing and protection of their constitutional and other legal rights. Section 6302, Definitions, defines a dependent child as one who is without proper parental care or control, subsistence education as required by law or other care or control necessary for his physical, mental or emotional health or morals. Section 6303(a)(1) provides that the proceedings of the chapter shall apply to a child who has been *7 alleged to be delinquent or dependent. An adjudication of the child is pursuant to a petition under section 6341, Adjudication, which provides:
(a) General rule.  After hearing the evidence on the petition the court shall make and file its findings as to whether the child is a dependent child. . . . If the court finds that the child is not a dependent child . . . it shall dismiss the petition and order the child discharged from any detention or other restriction theretofore ordered in the proceeding.
Section 6341(c), Finding of dependency, provides:
If the court finds from clear and convincing evidence that the child is dependent, the court shall proceed immediately or at a postponed hearing, . . . to make a proper disposition of the case.
Pursuant to subsection (d), Evidence on issue of disposition, evidence may be received at the disposition hearing. Section 6351, Disposition of dependent child, provides that upon a finding of dependency, the court may make any number of dispositions best suited to the protection and physical, mental and moral welfare of the child. Among those dispositions is:
(a)(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:
. . . .
(ii) An agency or other private organization licensed or otherwise authorized by law to receive and provide care for the child.
In conformity with the statutes, case law has been extensive in interpreting the procedures and the burdens imposed on the state to establish dependency, the need for care and the basis for removal of the child from the home. The child may be adjudicated dependent when it is established by clear and convincing evidence that the child is without proper parental care and such care is not immediately available. In re Miller, 380 Pa.Super. 423, 552 A.2d *8 261 (1988). The dependency of the child must first be determined before a disposition as to custody or change of custody may be considered. Helsel v. Blair County Children and Youth Services, 359 Pa.Super. 487, 519 A.2d 456 (1986). Following the adjudication of dependency, a child may not be separated from its parents unless evidence presented establishes that such separation is required by clear necessity. In Interest of Ryan Michael C., 294 Pa.Super. 417, 440 A.2d 535 (1982). The standard of review which is employed by the Superior Court in cases of dependency is broad, but the scope of review is limited in a fundamental manner by our Court's inability to nullify the fact finding of the trial court. In re Frank W.D., 315 Pa.Super. 510, 462 A.2d 708 (1983).
This case presents a question of first impression in the law of Pennsylvania as to the hearing of a dependency case under the Juvenile Act. The issue as we frame it is whether ineffectiveness of counsel is an available issue for appellate review in a dependency case and if so, how and when may the issue be raised in the context of a dependency proceeding. The first part of that question may be quickly and summarily answered yes; ineffectiveness may be alleged as a basis for appellate review. The Juvenile Act, 42 Pa.C.S.A. § 6337, Right to counsel, provides that a party is entitled to representation by legal counsel at all stages of any proceeding under the Act, and if indigent, the right to have the court provide counsel for him.
In Banks v. Randle, 337 Pa.Super. 197, 486 A.2d 974 (1984) (a case involving determination of paternity in a support action), we held that the right to the assistance of counsel means the right to effective assistance of counsel. In Banks, the court applied the standard used in review of criminal cases to the review of ineffectiveness of counsel in civil paternity proceedings. Id., 337 Pa.Superior Ct. at 202, 486 A.2d at 977. Banks was followed in Kitrell v. Dakota, 373 Pa.Super. 66, 540 A.2d 301 (1988), which likewise was a paternity case. We decline to follow precisely the reasoning or standard applied to Banks and Kitrell as there are clearly substantive and procedural differences in the nature *9 and conduct of the proceedings which requires us to tailor the standard and manner of reviewing ineffectiveness in the context of a dependency proceeding. At the outset, we point out that the standards which were applied to paternity decisions were derived from the criminal law because it implicated a potential loss of liberty. Corra v. Coll, 305 Pa.Super. 179, 451 A.2d 480 (1982). Corra adopted the three due process factors enumerated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976),  the private interests of the defendant, the risk of an erroneous adjudication of paternity and the governments interest,  and balanced them against the presumption that counsel is required for indigent defendants who face a potential loss of liberty as a result of an adjudication of paternity.
In a dependency case, the liberty interest of appellant is not at stake and the risk of erroneous adjudication is so substantially mitigated by safeguards, reviews and procedures directed toward uniting the family, that due process requires a less didactic approach than in criminal procedures. Our inquiry must then be directed to the questions raised, explored and decided in the context of juvenile and adoption proceedings as to what process is due. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); and McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); and Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
In Gault, the Supreme Court held that children were entitled to due process but limited the application to providing notice of the charges, a fair hearing, representation by counsel and the right against self-incrimination. In Winship, the Supreme Court determined the standard of proof would be beyond a reasonable doubt. In McKeiver, the Court determined a jury trial was not an element of due process required for juvenile proceedings. Santosky held *10 that termination proceedings required proof that was clear and convincing to justify termination, and in Lassiter, the Court held due process did not require appointment of counsel for indigent parents in every parental termination case. Thus it is readily apparent due process in juvenile cases varies according to the apparent needs of the situation.
Essentially, the theme espouses the principle that in delinquency, dependency or adoption cases involving children, the constitutional provisions, rules and laws designed to govern proceedings in adult criminal or civil actions are not necessarily applicable or desirable. Underlying this consideration is the belief that despite some misgivings about shortcomings in these types of proceedings, there is a retained belief that such proceedings are not purely adversarial and that traditional concepts of Parens Patriae, and the focus on the unity of the family and the best interest of the child, are sufficiently important to avoid hindering the court with procedural and technical limitations. The court could thereby focus a greater degree of its energies and resources in bringing about family unity and rehabilitation.
While a dependency proceeding is adversarial in the sense that it places the state in opposition to the parents with respect to the custody of the child as we said earlier, it does not implicate the liberty interests of the parent or the child as would be the case of a defendant in a criminal action. The underlying right to counsel in criminal proceedings is based on the sixth amendment to the United States Constitution which states in part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . and to have the assistance of counsel for his defense." The Pennsylvania Constitution, Article I, Declaration of Rights § 9, Rights of accused in criminal prosecutions, provides: "In all criminal prosecutions the accused hath a right to be heard by himself and his counsel. . . ." The fourteenth amendment of the United States Constitution, section 1, provides: "[N]or shall any State deprive any person of life, liberty, or property without due process of *11 law." From the interrelationships of these constitutional provisions, it may be and has been determined that a person charged with a crime is entitled to legal counsel and denial of that right is denial of due process of law. In Pennsylvania, this right is likewise incorporated in the Judicial Code, 42 Pa.C.S. 2501. See Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Brewer v. Williams, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In that respect, counsel who was not effective has been determined by various decisions to be the equivalent of no counsel and, therefore, a denial of due process. Evitts v. Lucey, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985); Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Commonwealth ex rel Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967). Thus we can fairly state that when liberty interests of a defendant in a criminal action are at issue, the effectiveness of counsel is relevant to a due process analysis, but only within the context of the evolved criminal statutes, rules and case law.
While ineffectiveness of counsel can be raised any time that new counsel becomes available, it is most frequently alleged in the context of a PCHA/PCRA petition, after all direct appeals have been exhausted, and as a collateral review alleging an extraordinary basis for review of counsel's stewardship. Such proceedings are not available in juvenile cases. In Interest of DelSignore, 249 Pa.Super. 149, 375 A.2d 803 (1977). First, they arose out of the context of the sixth amendment to the United States Constitution, which as seen above is directed to the liberty interests at stake, and are a substitute for the writ of habeas corpus which brought state criminal custody cases into the federal courts. The right to counsel in juvenile proceedings is not derived from the sixth amendment but from the fourteenth amendment, DelSignore, supra, and habeas corpus proceedings do not apply to dependency cases. Lehman v. Lycoming County Children's Services, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). The Supreme Court in Lehman states:

*12 Ms. Lehman argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in Hensley [v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973)] and Jones [v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)], and they suffer no "collateral consequences"  like those in Carafas [v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)]  sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.
Although a federal habeas corpus statute has existed ever since 1867, federal habeas has never been available to challenge parental rights or child custody. Indeed, in two cases, the Court refused to allow the writ in such instances. Matters v. Ryan, 249 US 375, 63 L Ed 654, 39 *13 S Ct 315 (1919); In re Burrus, 136 US 586, 34 L Ed 500, 10 S Ct 850 (1890).
Id. 458 U.S. at 510-11, 102 S.Ct. at 3237, 73 L.Ed.2d at 936-37.
Our careful review of the record and the briefs of the parties compels us to find that the adjudication of dependency is supported by clear and convincing evidence. The able and experienced trial judge, Honorable Fred P. Anthony, carefully weighed the evidence and properly found the child was dependent within the meaning of the Juvenile Act. To do otherwise would have been to ignore substantial and irrefutable evidence of physical and sexual abuse.
As required by the Juvenile Act, Judge Anthony proceeded in a bifurcated hearing to decide the proper disposition of the child pursuant to section 6351(b), Limitation on confinement, of the Act. Once again, we cannot fault his decision to place the child with foster parents under the supervision of CYS. Clearly, the life, safety and emotional well being of the child were at stake, when the overwhelming evidence of physical and sexual trauma was viewed in the context of parental care. Likewise, placement with the grandparents was not considered a viable option since the grandparents did not believe there was abuse and, in fact, assisted in supporting some of the conflicting versions of how the abuse occurred. The court did look to the possibility of placing the child with the grandparents at a later time if the progress of the child's physical and emotional state and the parenting and sexual counseling of the mother was proceeding satisfactorily. The court properly found the grandparents, no more than the mother, could provide for the welfare of the child at the time of the dispositional hearing and could not be trusted to deny inappropriate contact between the mother and the child during the rehabilitation period. Finding no abuse of discretion in this disposition, which is fully supported by the record, the appellant's challenges to those findings are denied.
*14 Finally, appellant alleges that because of ineffectiveness of prior counsel, the case should be remanded for a new trial so that new counsel can provide a rebuttal to allegations of sexual abuse by presenting available evidence and to more thoroughly cross-examine rebuttal witnesses presented by the Erie County CYS.
From the above, it is clear a blanket application of standards which evolved from the criminal law are not required for dependency proceedings. Other considerations which dictate a different approach, if not a different standard, are readily discernable. The standard of proof in dependency proceedings is clear and convincing evidence as opposed to proof beyond a reasonable doubt in criminal proceedings. In a dependency proceeding, which is always without a jury, the judge or master carries a more active role than does the judge in a criminal proceeding. Because of the Doctrine of Parens Patriae, he must focus on the best interest of the child and must be involved to the extent of requiring production of reports, evidence or more exhaustive testimony when he is not satisfied the parties have presented a complete case.
Under court scrutiny, the ineffectiveness of the lawyer does not carry the deleterious impact it would in a criminal case which is purely adversarial and over which the presiding judge acts primarily as an arbiter. The Juvenile Act, which is procedural in nature, details at great length the rights and duties of all participants and ultimately imposes great responsibility upon the state and the court to protect the unity of the family, assist in rehabilitation, constantly review and monitor the progress made toward unification and, ultimately, protect the best interest of the child. Similarly, when the trial court has failed to meet the procedural requirements of the Juvenile Act, our broad scope of review permits us to note the deficiencies and to correct them. Thus, pursuant to a heavy overlay of criminal rules, statutory and criminal requirements, the process for review espoused in Strickland v. Washington, supra, Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987), and *15 Commonwealth ex rel Washington v. Maroney, supra, is meaningful in the context of a criminal proceeding but a distortion when applied to dependency proceedings.
Most significantly in a catalogue of differences between the criminal and juvenile proceedings is the different time frame applicable to the cases. Adult cases move far more slowly and procedural delays do not work the same hardship on adults as they do with children. In Lehman, supra, in denying habeas corpus jurisdiction in the federal courts, the Supreme Court dealt specifically with the harm engendered by delay in a child dependency proceeding.
The states interest in finality is unusually strong in child-custody disputes. The grant of federal habeas would prolong uncertainty for children such as the Lehmans' sons, possibly lessening their chance for adoption. It is undisputed that children require secure, stable, long term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home" under the care of his parents or foster parents, especially when such uncertainty is prolonged. Extended uncertainty would be inevitable in many cases if federal courts had jurisdiction to relitigate custody decisions.
458 U.S. at 513-14, 102 S.Ct. at 3238-39, 73 L.Ed.2d at 938.
The same detriment is clearly applicable to a proceeding, such as that adapted from criminal cases, which would require remand for appointment of new counsel or to hear evidence which might be developed by new counsel on the mere allegation of ineffectiveness of counsel. It is indisputable that such a process would result in a minimal delay of a year in resolving the appellate review and it is highly unlikely the result would be different in the vast majority of the cases. Taking cognizance of previous holdings by this Court, that proceedings held pursuant to alleged violations of the Juvenile Act cannot serve the functions of a proceeding held pursuant to alleged violations of the Crimes Code, In Interest of Leonardo, 291 Pa.Super. 644, 436 A.2d *16 685 (1981), we must achieve a review of the claim of ineffectiveness of counsel without permitting such a review to impede the juvenile adjudication and disposition process unless it is clearly in the interest of justice.
We cannot ignore that a dual system exists for monitoring dependency cases and providing due process for dependent children which makes unnecessary a post hearing or habeas corpus proceeding as is required under the adult criminal system. Availability of services, 62 P.S. § 701, requires that the Commonwealth make available adequate child welfare services for children in need. Pursuant to section 703, Rules and regulations, the Department of Welfare shall promulgate and enforce rules and regulations necessary to the proper accomplishment of child welfare duties vested by law in the county institution districts. The Department, pursuant to section 708, may take charge and operate a county child welfare service which is not complying with regulations providing minimum standards of child welfare services. The Public Welfare Code, 55 Pa.Code 3130, Administration of County Children and Youth Social Service Programs, parallels and supplements the Juvenile Act, sections 6361-6365, The Child Protective Services Law, 11 P.S. §§ 2201-2224, and the Adoption Act, 23 Pa. C.S. § 2511 et seq. Pursuant to the regulations, section 3130.11, Goal of children and youth social services, is to ensure each child in this Commonwealth a permanent, legally assured family which protects the child from abuse and neglect; section 3130.35, Placement prevention and reunification services, provides counseling service, parent education, homemaker/caretaker service, part day service; section 3130.38, Other required services, provides for (a) Court-ordered services, (b) Child protection services, (c) Family service plans; section 3130.61, Family service plans, provides that within 60 days of accepting a family for service, a written family service plan shall be prepared detailing the goals and changes needed and the method to achieve them, permitting participation by the family in creating the plan; section 3130.62, Parent appeals and fair *17 hearings, provides for administrative review of the plan if parents disagree or the agency fails to provide service with reasonable promptness; and section 3130.63, Review of family service plans, provides review of family service plans every six months, and if the child is in placement, a placement review every six months pursuant to section 3130.71, Placement reviews. Pursuant to section 3130.72, Dispositional review hearings, in addition to placement review, the agency may request a dispositional review hearing pursuant to the Juvenile Act, 42 Pa.C.S. §§ 6301-6365, at the time of a placement review requesting return of the child, continued foster care, placement for adoption or other long-term care. Throughout these proceedings, legal counsel is provided if unavailable. An overlay of ineffectiveness of counsel proceedings and standards applicable to criminal proceedings would do little to improve due process in a system already well guarded.
Detailing the unique features of dependency hearings makes clear our special role in assuring counsel is not ineffective whether or not such a claim is made. Juvenile proceedings are more informal than criminal proceedings, In re Gault, supra, section 6336(a) and (d), Conduct of hearings; more exhaustive social and psychological data is supplied, section 6339, Investigation and report, the evidence must be clear and convincing (rather than beyond a reasonable doubt) to find dependency, section 6341(c), Finding of dependency; all evidence including some hearsay may be received in disposition, section 6341(d), Evidence on issue of disposition, which requires a finding of clear necessity to place the child out of the home, section 6301(b)(3); special less stringent evidentiary requirements under the Child Protective Service Act, 11 P.S. § 2222, Hearings and evidence; and there being no requirement of post-dispositional hearings before an appeal may be taken. An example of this Court's alertness in assuring due process in dependency cases, despite failure to allege ineffectiveness of counsel, may be found in Fallaro v. Yeager, 364 Pa.Super. 408, 528 A.2d 222 (1987), wherein we reversed a *18 finding of dependency, unsupported by a petition, in the course of a custody proceeding. A broader approach than in criminal proceedings fulfills the requirements of appellate review in dependency cases on ineffectiveness of counsel allegations.
Adopting from the legislature's most recent pronouncement on this issue, the PCRA Act of April 13, 1988, 42 Pa.C.S. § 9543(a)(2)(ii), we would require that a claim of ineffectiveness of counsel must plead and prove that counsel's stewardship "so undermined the truth-determining process that no reliable adjudication" or disposition of a dependent child could have taken place. Procedurally, since a claim of ineffectiveness could only present itself on appeal, and as this would be the first opportunity new counsel would have to make such an allegation, the appellate procedure must lend itself to the process. We are presented with a dilemma by the elimination of the doctrine of fundamental error, which was renounced by Dilliplaine v. Lehigh Valley Trust Co., 457 Pa. 255, 322 A.2d 114 (1974), and cannot overlook the waiver of certain procedural defects, which are overcome after denial on direct appeal in criminal cases, by raising the same issues in PCHA/PCRA hearings alleging ineffectiveness of counsel. Coupling the principle above, derived from the PCRA legislation, with the fundamental fairness doctrine, we can achieve, with the traditional broad scope of review in dependency cases, an effective and expeditious determination of ineffectiveness of counsel issues, without violating the underlying tenants of the juvenile proceeding.
In the context of a dependency case, in the exercise of its broad scope of review, an allegation of ineffectiveness of counsel on appeal would result in a review by this Court of the total record with a determination to be made whether on the whole, the parties received a fair hearing, the proof supports the decree by the standard of clear and convincing evidence, and upon review of counsel's alleged ineffectiveness, any failure of his stewardship was *19 the cause of a finding of dependency. Mere assertion of ineffectiveness of counsel is not the basis of a remand or rehearing, and despite a finding of ineffectiveness on one or more aspects of the case, if the result would unlikely have been different regardless of a more perfect stewardship, the decree must stand.
As applied to the facts of this case, we have no difficulty in affirming the trial court. Appellant makes two assertions of ineffectiveness of trial counsel. The first is that he was ineffective for failing to present available evidence to rebut the allegations of sexual abuse against the appellant and second, as a corollary, he failed to adequately cross-examine rebuttal witnesses presented by the Office of Children and Youth. Our careful review of the record establishes that the appellant's allegation of existence of rebutting evidence is weak if not nonexistent. Appellant's proposed rebuttal witness is Dr. Bashline, J. P.'s primary health care provider, who might have been able to testify as to whether or not he had observed signs of abuse on J.P. Appellant, however, is unable to say when Dr. Bashline last saw J.P., how long she was under his care, whether or not he was available or if he would testify. As appellant has not proposed with specificity what the rebuttal witness could present to counteract the overwhelming case of child and sexual abuse established by this record, we would be giving approval to a fishing expedition if we were to remand this case. As to the failure to refer to Dr. Bashline's medical records, again the claim fails because appellant has not detailed anything in those records which would assist in rebutting the evidence presented by CYS. We, therefore, conclude that even if counsel was ineffective in not calling Dr. Bashline and presenting his records or investigating his possible contribution, present counsel has failed to demonstrate such ineffectiveness so undermined the truth determining process that no reliable adjudication of dependency could have been made.
*20 As to the second prong of the ineffectiveness claim, the mere assertion of inadequate cross-examination of Office of Children and Youth rebuttal witnesses, without pointing to how a more vigorous cross-examination would have changed the result, is not acceptable. In one instance, appellant points out that there was a discrepancy between the testimony concerning serious diapering problems and the notes of Great Lake Rehabilitation Center, which did not mention this. This discrepancy standing alone is not significant as the problem presented to the foster mother and examining physician regarding the sexual aspects was focused differently than that at the rehabilitation center, which dealt primarily with the broken arms. The record shows cross-examination, direct examination and court examinations were exhaustive. One may always believe that better or more cross-examination might change the result, but the question of adequacy is measured on the totality of the record presented and not by the possibility of a more perfect examination. In response to this issue as presented to Judge Anthony in the trial court, his Opinion states:
At the time of the hearings [prior counsel] vigorously asserted [appellant's] position, even requested additional time in order to secure an expert witness. [Prior counsel] called character witnesses and argued his case with a thorough understanding of the legal principles involved.
Slip Op., Anthony, J., 4/21/88, p. 6.
We believe the appellant received a full and comprehensive hearing and that the trial court made a finding of dependency and disposition placing the child in foster care fully supported by the record. Our review of the case establishes the hearing to be fundamentally fair and trial counsel's ineffectiveness, if any, played no part in the result. Accordingly, in conformance with our standard of review in dependency cases, which is broad, we find the decision of the trial court is fully supported by competent evidence and affirm the Orders of court as to dependency *21 and disposition. See In the Interest of Black, 273 Pa.Super. 536, 417 A.2d 1178 (1980).
Order affirmed.[2]
CIRILLO, President Judge, concurs in the result.
BECK and ROWLEY, JJ., filed concurring statements.
*22 MONTEMURO, J., filed concurring and dissenting opinion, joined by CAVANAUGH and ROWLEY, JJ.
JOHNSON, J., filed dissenting opinion.
ROWLEY, Judge concurring.
I join in the Concurring and Dissenting Opinion by Judge Montemuro. I write separately, however, to express my understanding that there is no requirement in juvenile dependency cases that post-trial motions must be filed in order to preserve for appellate review the issue of ineffectiveness of trial counsel. Therefore, the fact that no post-trial motions were filed in the instant case is inconsequential.
It is also my understanding that Judge Montemuro would not expand our traditional scope of review in dependency proceedings to permit consideration of issues not raised by the parties. In addition, where an ineffectiveness issue is raised in a dependency action, it is my understanding that Judge Montemuro would apply the traditional ineffective assistance of counsel test applicable to criminal cases and enunciated in Commonwealth ex rel. Washington v. Maroney, 427 Pa. 599, 235 A.2d 349 (1967) and Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973 (1987).
MONTEMURO, Judge, concurring and dissenting.
I am in full accord with the majority's conclusions that effectiveness of counsel is a cognizable issue in the review of dependency proceedings; that the child herein was justifiably determined by the trial court to be dependent, and that appellant's legal representation was not of such character as to be a critical factor in this decision. However, I disagree with the majority's reasoning as to the suggested procedure for preserving and raising the ineffectiveness of counsel issue in the context of a dependency hearing.
The majority insists that the standard and manner of reviewing ineffectiveness must be tailored to fit the sort of case in which the allegation of counsel's poor performance occurs, in this instance a dependency proceeding. (Majority Opinion at 8-9). I would reiterate the language of the *23 right to counsel provision of the Juvenile Act, 42 Pa.C.S.A. § 6337, which states that "a party is entitled to representation by legal counsel at all stages of any proceedings under this Chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him". (Emphasis added.)
Given the breadth of the right to counsel conferred by the Juvenile Act, a logical reading of the action-specific ineffectiveness standard suggested by the Majority would require that there must be a discrete form of testing effectiveness dependent upon the type of proceeding in which it is alleged to have occurred. Clearly, such a schema is unwieldy. It seems more feasible, if only as a practical matter, that where the right to counsel exists at all it should carry a particular and unmistakable meaning, obvious to everyone involved, whether provider or recipient of the representation.
In fact the method utilized by the Majority in assessing appellant's claims, although described as a combination of the standard set by the PCRA and verbalization of the "fundamental fairness" doctrine, is easily recognizable as a close relative of the formula applied in criminal cases, and the analysis applied bears a strong resemblance to that which appears in Commonwealth v. Durst, 522 Pa. 2, 559 A.2d 504 (1989). (Ineffectiveness claim grounded in counsel's failure to interview putatively exculpatory witnesses.) The first issue, counsel's failure to cross examine rebuttal witnesses, is examined to determine whether it has arguable merit. The majority finds that due to lack of specificity in the facts alleged, it does not. Compare, id., 522 Pa. at 4-5, 559 A.2d at 505. It further concludes that even were counsel to be found ineffective in this regard, his action cannot be said to have rendered the adjudication unreliable, i.e., to have caused sufficient prejudice to appellant's case to warrant relief. Compare, id., 522 Pa. at 6, 559 A.2d at 506. Appellant's second assertion of poor representation suffers from the same deficiency as to offer of proof, and is *24 similarly found wanting. The Majority concludes that no need exists for remand to further explore the allegations.
The majority dismisses the structure of raising and assessing ineffectiveness claims already provided by parallel systems, the criminal, civil commitment, and paternity action processes, as paradigms unsuitable for adaptation to the juvenile system because their derivation is from the Sixth Amendment rather than the Fourteenth. It is argued that because no liberty interest is involved in dependency cases, they are not truly adversarial, and the paternal/avuncular responsibility of the trial courts to determine the best interests of the child, buttressed by our broad scope of review is sufficient to insure the effectuation of due process. However, I am not convinced that a threat to liberty is the sole determinant of the worth of a interest, or of whether measures should be taken to protect it. Deprivation of one's child, perhaps permanently, is a weighty "interest", albeit one involving no "right". The existence of reasons, other than a liberty interest, for instituting protections becomes more obvious in light of the majority's avoidance of use of the criminal standard of ineffectiveness even where the liberty interest of a juvenile headed for long term commitment to a secure facility is involved. See, Commonwealth v. Smith, 393 Pa.Super. 39, 573 A.2d 1077 (1990) (Dissenting Opinion by Tamilia, J.); In re Cunningham, 393 Pa.Super. 79, 573 A.2d 1096 (1990) (Dissenting Opinion by Tamilia, J.). The existence of a liberty interest is not, therefore, dispositive of the propriety of using the criminal system's ineffectiveness standard in other contexts. Further, the Majority's invocation of the rules applied in federal habeas corpus cases is inapposite, since the federal courts have traditionally refused to intervene in family court cases.
It is also the majority's position that "the ineffectiveness of the lawyer does not carry the deleterious impact it would in a criminal case which is purely adversarial and over which the presiding judge acts primarily as arbiter" (Majority Opinion at 14). However convincing this notion might be *25 were this the best of all possible worlds, it is not operational in the system as it is now constituted. Harried judges, case-laden by the demands of populous judicial districts, or, in some instances, bearing the entire judicial burden of the areas they serve, may, despite a full measure of dedication, simply lack the time to perform the role of parens patriae in any meaningful way. It is also unfortunately true that in the real world, not all probation officers, social workers and other personnel assigned to the duty of dealing with the problems of children, and sometimes acting as their advocates, possess the same, or the necessary degree of intelligence, dedication, compassion and interest. Under our system of jurisprudence there is no substitute for competent legal counsel whose primary responsibility it has always been to ferret out all the facts of a case and bring them to the attention of the trial judge. This fact was clearly recognized by the Supreme Court in In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and motivates the assignment to the juvenile system in all its forms those due process, and other, rights which now exist. The majority's insistence that the juvenile court would inevitably be hindered in its performance by the introduction of procedural or "technical" requirements becomes less persuasive in light of the finding by Justice Fortas, that "unbridled discretion, however benevolently motivated, is frequently a poor substitute for principle and procedure." Id. at 18, 87 S.Ct. at 1439. As it explained at great length, there is no inconsistency between the establishment of procedure and the continuation of whatever is uniquely favorable to the juvenile. The Juvenile Act in fact codifies policies which affect the status and treatment of children in a legal setting, and as well all parties affected by its proceedings.[1] Because it is silent on some aspects of those rights, or the procedures necessary to ensure them, does not mean that *26 what is omitted can be ignored. The very question we are now considering, ineffectiveness of counsel claims, is a testament to the Act's flexibility.
What the Act fails to do, however, is to establish procedures pre or post trial, by which those constitutional and other rights it attempts to ensure are implemented.
While the majority suggests that the direct appeal process coupled with the broad scope of appellate review are together adequate to meet the exigencies of whatever deficiencies might occur in a juvenile case, this is clearly not universally true. It ignores the impact of the waiver doctrine on claims not properly preserved for our review. In Interest of DelSignore, 249 Pa.Super. 149, 375 A.2d 803 (1977) has never been overruled, nor have we been granted sufficient latitude in our review to raise sua sponte any issues which have been omitted by counsel. The majority's reliance on fundamental fairness to resolve issues of trial error or counsel's representation offers no solace in this regard. Compare, In re Sanders Children, 454 Pa. 350, 312 A.2d 414 (1973) (Issues not properly raised in court below would not be considered on appeal from judgment involuntarily terminating parental rights.)
It is insisted that the imposition of procedural requirements would affect the brevity of time within which juvenile matters are handled, a major difference between the juvenile system and the criminal one, and that our access to the whole record obviates the necessity for, e.g., remand for hearing, appointment of new counsel, or any other time-consuming intermediate remedial or investigatory steps.[2] However, the question of delay reflects more upon the size of the criminal system than upon an inherent defect in the procedure prescribed to test ineffectiveness claims. The presentation of such a claim in the context of juvenile *27 proceedings no more guarantees remand than it does in the criminal system. As the analysis performed by the Majority in this case demonstrates, the obstacles to presenting a meritorious case of effectiveness are formidable: since counsel is presumed to be effective, he/she may not be second-guessed on appellate review; the issues must, a priori, have arguable merit; the strategies chosen by counsel must be shown to have no reasonable basis designed to effectuate the client's interests; if proven, the ineffectiveness of counsel must have had some discernable prejudicial effect. Some of this must be persuasively argued before remand is warranted, and mere unsupported allegations would, as they always have, receive short shrift. Again, the use of a similar formula to argue incompetence of counsel in matters relating to children does not and should not automatically decrease the burden or increase the time necessary to determine the best interests of the child.
What is lacking now is any suggestion about what must occur where the necessity for an explanation of counsel's actions becomes apparent. Absent remand we would not have a complete record, and without new counsel, there would be no one to raise and/or preserve an issue unless trial counsel were willing to accuse him or herself of malfeasance. Even assuming our willingness to address issues sua sponte, without the presentation, we might never know that counsel's competence was being questioned. This becomes particularly important in light of the one stricture placed upon our scope of review, that is, the deference with which we must treat the factual findings of the trial court. In Interest of Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (1988). As Judge Beck points out in her Concurring Opinion (C.O. at 4), the Juvenile Act in arguing for unification and preservation of the family requires that removal of the child can only be accomplished upon a showing of clear and convincing evidence. It may be that absent the assistance of effective counsel, the evidence offered, although meeting the standard, will not reflect the true circumstances of the case.
*28 In sum, I believe the majority overemphasizes the differences existing between juvenile and other sorts of proceedings to deny applicability of similar procedures and standards. What is common to all of the cases in which the ineffectiveness formula is used, is that despite the theoretical lack of truly adversarial parties, it is always the state, with its superior and seemingly endless legal resources, against which a defense must be mounted. The majority would also have us assume that it is only the state which can represent the child's best interests. This theory obviates the necessity for any system, since it would be redundant to litigate a foregone conclusion. As no liberty interests would be involved, and if these are indeed the sole consideration, the state need only seize those children whose parents are alleged to perform their responsibilities poorly, and give them to others, either institutions or individuals, whom the state has determined to be worthy, an absurd scenario. Whether the end result involves incarceration, confinement in a mental hospital or youth treatment center, or as here the removal of one's child, the forces of opposition are always larger and better equipped, but are not necessarily either correct or just in their assessments. We may not, in addition to their already formidable array of resources, credit them with omniscience as well.
If such purely procedural requirements as the Rules of Appellate Procedure find universal application to cases of widely differing provenance, interest, and relief, I see no reason why the methodology for dealing with ineffectiveness claims posited as desirable in In Re Smith, 393 Pa.Super. 39, 573 A.2d 1077 (1990), and In Re Cunningham, 393 Pa.Super. 79, 573 A.2d 1096 (Pa.Super. 1990), cannot be applied here. In the last analysis, adoption of these procedures would, I believe, operate in the best interests of the child.
ROWLEY and CAVANAUGH, JJ., joined.
BECK, Judge, concurring.
The principal issue presented is whether a mother whose child was adjudicated dependent was wrongfully denied the *29 effective assistance of counsel at the adjudication hearing. I agree with the majority that a decree adjudicating a child dependent may not be disturbed on appeal on the basis of the ineffectiveness of a parent's counsel unless the performance of counsel affected the outcome of the dependency proceeding. I also agree that the appellant in this case has failed to prove that she was prejudiced by any error or omission on her counsel's part. Accordingly, I concur in the result reached by the majority. However, I differ with some aspects of the majority's legal reasoning.
S.P., the appellant in this case, is the mother of J.P., a young child. When J.P. was two years old, the Erie County Office of Children and Youth filed a petition seeking to have J.P. adjudged dependent in light of evidence that J.P. had been physically and sexually abused. Prior to the adjudication hearing, the Court of Common Pleas determined that appellant was indigent and appointed counsel to represent her. On January 15, 1988, the court entered an order adjudging J.P. dependent, and on February 5, 1988, the court entered a dispositional order placing J.P. under the care and supervision of the Office of Children and Youth (OC & Y). The court found that although all reasonable efforts had been made to prevent a foster care placement, the continued presence of J.P. in her mother's home would be contrary to the welfare of the child. The court therefore directed OC & Y to place J.P. in foster care pending a six-month review hearing, and to seek an adoptive home for J.P. unless her foster parents agreed to keep her. The court also ordered appellant to undergo mental health counseling, and stated that if appellant complied with her treatment plan, consideration would be given to placing J.P. with her great-grandparents.
Appellant obtained new counsel and filed a timely appeal from the court's dispositional order. She now seeks relief on the grounds that her trial counsel provided ineffective *30 assistance at the dependency adjudication hearing.[1]
We are called upon to consider a challenge to the effectiveness of counsel raised on direct appeal from a dispositional order placing a dependent child in foster care. This case does not involve a collateral attack on a dispositional order entered after an adjudication of dependency. Nor does this case involve an application of the right to effective assistance of counsel to juvenile delinquency proceedings. The majority's references to the writ of habeas corpus and to the rights of juveniles are obiter dictum. I would defer consideration of these matters until they are squarely presented for review.
Turning to the issue at hand, I fully agree with the majority that appellant has a right to the effective assistance of counsel. Appellant was the legal custodian of J.P. and as such was clearly a party to the dependency proceedings. In the Interest of Michael Y., 365 Pa.Super. 488, 496, 530 A.2d 115, 120 (1987). The Juvenile Act explicitly states that "a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him." 42 Pa.Cons.Stat.Ann. § 6337 (Purdon 1982). The clear implication of this language is that indigent parents whose children are subject to dependency proceedings have a right to the appointment of counsel who is capable of providing effective assistance. As the Pennsylvania Supreme Court noted when interpreting the right to counsel provision of the Mental Health Procedures Act, "[f]or the legislatively-created right to representation to have meaning, counsel must be effective." In re Hutchinson, 500 Pa. 152, 157, 454 A.2d 1008, 1011 (1982). Any interpretation of the Juvenile Act that would permit the appointment of ineffective counsel at a dependency hearing would render the statutory *31 right to counsel worthless and would subvert the intent of the legislature. Cf. Adoption of T.M.F., 392 Pa.Super. 598, 573 A.2d 1035, 1042 (1990) (en banc) (Beck, J., concurring) (discussing right to effective assistance of counsel in proceedings to terminate parental rights).
Since parents do have a right to the effective assistance of counsel in dependency proceedings, it is necessary to develop a standard for evaluating ineffectiveness claims raised on appeal from dependency orders. In fashioning a standard, we must bear in mind that a dependency hearing is not simply a contest between the parent and the state. As is the case in a parental termination proceeding, the result of the hearing has a direct, profound, and inevitable effect upon a third party  the child. Once a child is adjudicated dependent and placed in foster care, it is of great importance that state agencies plan for the child's future and act to ensure the child the benefits of a stable home environment. In most cases, the welfare of the child requires that state agencies move expeditiously toward one of two goals  reunifying the child with the parent as soon as the parent is able to accept and fulfill parental responsibilities, or terminating parental rights and placing the child for adoption where parental incapacities are such that reunification is impossible. See Changing the Goal of the Plan: When May the Reunification Goal Be Abandoned?, Children's Rights Chronicle, Vol. 6 No. 3 (1987-88) (discussing permanency planning in dependency cases). Unfortunately, relitigation of the underlying dependency determination would create additional uncertainty for the child and would delay a final resolution of the problems that led to the initiation of dependency proceedings. Accordingly, where a dependency adjudication and disposition has been properly entered on the basis of sufficient evidence, the state has a powerful interest in preserving the finality of the trial court's order on appeal.
In light of these special considerations, there is good cause for applying a more stringent test for measuring the effectiveness of parents' counsel in dependency proceedings *32 than for measuring the effectiveness of lawyers in most other settings. I would therefore adopt the heightened standard that I have previously argued should apply to claims of ineffectiveness of parents' counsel in parental termination proceedings. Adoption of T.M.F., 392 Pa.Superior Ct. at ___-___, at 573 A.2d 1035, 1053-1056 (Beck, J., concurring). A parent may not prevail if her ineffectiveness claim lacks arguable merit or if the disputed actions or omissions of her counsel were reasonably designed to effectuate her best interest. Moreover, the parent must come forward with evidence that a high degree of likelihood exists that but for an unprofessional error on counsel's part, the trial court's adjudication or the trial court's dispositional decision would have been different.
I view these observations as consistent with the "fundamental fairness" doctrine proposed by the majority. Majority Op. at 18. I would caution, however, that an ineffectiveness of counsel claim must not be confused with a challenge to the sufficiency of the evidence supporting the dependency decree. Unless the trial court's conclusion that the child is without proper parental care and that such care is not immediately available is supported by clear and convincing evidence, the decree must be reversed even ife parent has not challenged the effectiveness of counsel's performance. See In the Interest of Anita H., 351 Pa.Super. 342, 505 A.2d 1014 (1986). On the other hand, if the parent specifically argues and establishes that the ineffective performance of counsel resulted in the entry of the trial court order, a new hearing must be held even if the dependency determination is supported by clear and convincing evidence. Cf. In Re Manuel, 389 Pa.Super. 80, 84, 566 A.2d 626, 629 n. 7 (1989) (denial of right to counsel requires remand despite sufficiency of evidence supporting adjudication of dependency).
Finally, I agree with the majority that the ineffectiveness of counsel claim presented in this case is without merit. I have independently reviewed the trial court record, and I conclude that appellant has failed to establish that any *33 error on her counsel's part altered the outcome of the dependency proceeding. The trial court order must be affirmed.
JOHNSON, Judge, dissenting.
I agree with the majority that the adjudication of dependency is supported by clear and convincing evidence and that the able and experienced trial judge carefully weighed the evidence and properly found the child to be dependent within the meaning of the Juvenile Act. Secondly, the trial judge did not refuse to consider placing the child with family members. As the majority correctly points out, the trial court carefully considered the testimony of the child's maternal great-grandparents, C. and R.T., and concluded that placement with them would not be adequate for the safety and welfare of the child. This was because the great-grandparents did not believe that the child had been sexually abused, even though they were present and heard all of the testimony presented, the very testimony upon which the court found abuse to have occurred.
I agree with the majority, therefore, that those two issues raised by S.P., concerning (1) the factual determination of dependency and (2) the alleged refusal to consider placement with family members, are totally without merit. Judge Fred P. Anthony conducted a full and comprehensive hearing. His finding of dependency and disposition placing the child in temporary foster care is fully supported by competent evidence and should be affirmed, without more. In Interest of Black, 273 Pa.Super. 536, 417 A.2d 1178 (1980).
The remaining issue, in my view, is whether a parent may raise the alleged ineffectiveness of that parent's counsel as a ground for reviewing the action of a trial court in a dependency case under the Juvenile Act and the Child Protective Services Law. Since I do not believe that ineffectiveness of counsel has any place in a dependency proceeding, I must dissent.
*34 It is certainly true that the Juvenile Act contains an express provision regarding the right to counsel:
§ 6337. Right to counsel
Except as otherwise provided under this chapter a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he [or she] is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him [or her]. . . . If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.
42 Pa.C.S. § 6337. There is nothing in the statutory provision which embraces the doctrine of effective assistance of counsel, and I would decline to so enlarge the statutory grant.
The majority relies, in part, on this court's prior decision in Banks v. Randle, 337 Pa.Super. 197, 486 A.2d 974 (1984) for the proposition that the right to the assistance of counsel means the right to effective assistance of counsel. My reading of Banks leads me to conclude that there is nothing in either the facts or the analysis contained therein to justify the extension of the principle to benefit a parent in a dependency proceeding such as we face on this appeal.
In the Banks case, the three-judge panel had to determine whether a putative father could secure a new trial on the issue of paternity if it could be established that the father's counsel in the first civil trial was incompetent. The Banks court first reviewed two earlier cases involving paternity defendants and re-affirmed that denial of counsel in civil paternity matters is inconsistent with due process. Those earlier cases were Corra v. Coll, 305 Pa.Super. 179, 451 A.2d 480 (1982) (indigent defendant) and White v. Gordon, 314 Pa.Super. 185, 460 A.2d 828 (1983) (not indigent defendant). In both cases, our court was mindful of the potential deprivation of liberty confronting any paternity defendant. Without such recognition, the Fourteenth Amendment to the United States Constitution, and its prohibition against depriving any person of their liberty without due process of *35 law, would not have been implicated. Cf. Corra v. Coll, 305 Pa.Super. at 185-189, 451 A.2d at 483-85 with White v. Gordon, 314 Pa.Super. at 189, 460 A.2d at 830.
Our court concluded in Corra and White that a paternity defendant, faced with potential loss of liberty even following a civil determination of paternity, was entitled to be represented by counsel. I find this analysis to be sound. In Banks v. Randle, supra, the rationale for extending that right to include the right to effective assistance of counsel is not as clear. The Banks panel relied exclusively on cases involving criminal defendants for its conclusion that the right to counsel axiomatically meant the right to the effective assistance of counsel. Within the context of a paternity trial, I believe this was error.
There is really only one circumstance wherein the right to the assistance of counsel should automatically and necessarily mean the right to the effective assistance of counsel. This occurs in those situations where the counsel clause of the Sixth Amendment to the United States Constitution is implicated. The Constitution guarantees a fair trial through the due process clauses, but it defines the basic elements of a fair trial largely through the several provisions of the sixth amendment, including the counsel clause:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
I have found no case where our federal Supreme Court discusses the effective assistance of counsel in anything other than a sixth amendment context, beginning with Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), continuing through Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1161 (1938); Gideon v. Wainwright, *36 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), and more recently, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). When Justice O'Connor opines that "the Court has recognized that `the right to counsel is the right to the effective assistance of counsel.' McMann v. Richardson . . .," she does so only after a careful and thorough analysis of the sixth amendment's counsel clause. Strickland v. Washington, 466 U.S. at 680-86, 104 S.Ct. at 2060-64, 80 L.Ed.2d at 688-92. The "constitutional command" to which Justice O'Connor refers, Id. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692, as well as the "right to counsel guaranteed by the Constitution "mentioned by Judge Wickersham in Banks v. Randle, 337 Pa.Super. at 202, 486 A.2d at 977, both point to the fundamental right to the assistance of counsel found in the sixth amendment.
The due process clause of the fourteenth amendment does not require appointment of counsel in every parental status termination proceeding. Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Since I believe that the effective assistance of counsel principle has constitutional underpinnings within the sixth amendment, albeit made applicable to the states through the fourteenth amendment, Gideon v. Wainwright, supra, I do not believe the principle can be applied in other settings without a sound, independent reason therefor. Our Pennsylvania Supreme Court has found such a circumstance in only one other situation.
Our supreme court has held that the vindication of the due process rights of an alleged mental incompetent require that such a person receive effective representation of counsel at civil commitment proceedings. In Re Hutchinson, 500 Pa. 152, 454 A.2d 1008 (1982), affirming 279 Pa.Super. 401, 421 A.2d 261 (1980). In Hutchinson, the court was required to balance the competing interests of the Commonwealth and of the individual in the civil commitment context. The court recognized that involuntary civil commitment *37 of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections. Id. 500 Pa. at 156, 454 A.2d at 1010, citing Appeal of Niccoli, 472 Pa. 389, 395 n. 4, 372 A.2d 749, 752 n. 4 (1977); Commonwealth ex rel. Finken v. Roop, 234 Pa.Super. 155, 163, 339 A.2d 764, 768 (1975), appeal dismissed, 424 U.S. 960, 96 S.Ct. 1452, 47 L.Ed.2d 728 (1976).
In Hutchinson, the right evolved not only from statute, the Mental Health Procedures Act (MHPA), 50 P.S. § 7304(c)(3), § 7304(e)(1), (2) and (3), but also due process considerations expressly set forth in the statute, 50 P.S. § 7102, 500 Pa. at 156, 454 A.2d at 1010. As Justice McDermott, speaking for the majority, declared:
For the legislatively-created right to representation to have meaning, counsel must be effective. Indeed, without the guiding hand of competent counsel, appellee's right to representation would be rendered worthless. Moreover, appellee would be unable to enjoy the other protections guaranteed by Section 304 of the MHPA [50 P.S. § 7304], such as the right to confront and cross-examine witnesses and the right to a public hearing on the record. (footnote omitted).
500 Pa. at 157, 454 A.2d at 1011. Banks v. Randle, supra, did not have the benefit of the analysis set forth in Hutchinson by which our supreme court balanced the competing interests of the Commonwealth and of the individual, and reviewed express statutory language mandating conformance with principles of due process. Perhaps Banks v. Randle should be revisited.
Even if it is finally determined that the Banks case was properly decided, I find it sufficiently apart from the facts now before us to render it inapposite. All of the paternity cases had their primary focus on the named defendant who, like a defendant in a criminal case, faced potential loss of liberty. Thus, even though a sixth amendment argument could not be made  the proceedings being civil in nature  the fourteenth amendment proscription against deprivation *38 of property or liberty without due process still obtained.
In contrast, the focus in a dependency/abuse case is not on the parent. As the majority observes, the focus of the trial court in a dependency proceeding is on the child and that child's best interests. While one of the purposes of the Juvenile Act is to preserve the unity of the family whenever possible, it is also concerned with providing for the care, protection, and wholesome mental and physical development of children coming within its provisions. 42 Pa.C.S. § 6301(b)(1). The focus at any dependency hearing must be to ascertain whether the child involved is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for the child's physical, mental or emotional health, or morals. 42 Pa.C.S. § 6302.
In his Opinion filed pursuant to Pa.R.A.P. 1925, Judge Anthony acknowledged that post-trial counsel for the mother had alleged ineffective assistance of prior counsel but these allegations were not adequately explained. Prior to argument before this court en banc, counsel for the mother was directed to file a supplemental brief addressing the question, among others, whether effective assistance of counsel is a concept applicable to proceedings involving child dependency under the Juvenile Act. The Supplemental Brief filed on behalf of the appellant mother presents the question but fails to advance any authorities or legal argument on this threshold issue.
The right to the Assistance of Counsel contained in the sixth amendment is a fundamental, constitutional right which plays a crucial role in the adversarial system embodied in that amendment. Strickland v. Washington, 466 U.S. at 685, 104 S.Ct. at 2063, 80 L.Ed.2d at 692. Counsel plays a critical role in the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney who plays the role necessary to ensure that the trial is fair. It is for this reason that, in criminal proceedings involving the sixth amendment, the right to *39 counsel is equated with the right to effective assistance of counsel. Id.
By way of contrast, the right to counsel we here examine is a creature of statute. 42 Pa.C.S. § 6337. Without minimizing the interest of a natural parent in the outcome of a dependency proceeding, it can not be said that any property or liberty interest of the parent is either "fundamental" or "essential to a fair trial" within the context of the dependency proceeding. Cf. Lassiter v. Department of Social Services, 452 U.S. at 27-29, 101 S.Ct. at 2159-2161, 68 L.Ed.2d at 649-651; Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976). While our legislature has decreed that any party to a proceeding under the Juvenile Act is entitled to representation by counsel, the legislature has not attempted to elevate that statutory right to one of constitutional dimension. Nor have I found a clear and solid trail through our cases that would permit such an elevation.
Since I conclude that the concept of ineffective assistance of counsel has no place in a civil dependency proceeding where the needs of the child are paramount, I do not consider how and when such an issue might be raised. I would reject the attempt to introduce the principle into dependency proceedings. I, therefore, dissent.
NOTES
[1] Further references to sections of the Pennsylvania Statutes are taken from the Juvenile Act.
[2] While Judge Johnson has written a Dissenting Opinion, since he agrees with the result and everything except the ineffectiveness issue, it is more properly a Concurring and Dissenting Opinion.

Judge Johnson's approach allows no leeway for those cases in which counsel is ineffective thereby resulting in an inadequate application of the safeguards provided under the Juvenile Act. In an era in which the courts are inundated with abuse and dependency cases and funding for mandated support services has been so inadequate as to result in a crisis in the child welfare system, we must allow opportunity to call to our attention errors in state intervention and disposition, which violated the parties' rights under the Juvenile Act. The safeguards, as discussed in the majority Opinion, are extensive and essential and by and large are implemented by well-functioning Juvenile Courts and child welfare agencies. In most cases, the system works well, but in any case where state intervention between parent and child results in placement out of the home, which could lead to termination of parental rights under the concept of permanency planning, failure of counsel which leads to an improper decision can have tragic consequences. The review provided by the majority Opinion limits the disruption to the process which would result from a criminal-type approach, while permitting this Court to be alerted to possible errors occasioned by inadequate stewardship. This balance can only strengthen our treatment of some of the most difficult cases with which we must deal. Since the juvenile process provides for no post-trial proceedings or motions and there is no means for raising ineffectiveness issues after an appeal is concluded, the only opportunity for reviewing ineffectiveness of counsel claims must be during the one permissible appeal. Denying such a claim on the basis that it is a civil proceeding, ignores the unusual and exceptional character of dependency proceedings which have no counterpart to other civil proceedings (except termination proceedings). Much more is required in these proceedings in terms of proof and protection of the rights of parties than in other civil procedures, most of which are addressed in the Juvenile and Child Protection Acts, and from this may be inferred a greater harm that results from ineffective counsel than in other civil cases. Since the trial court's primary charge is to preserve the unity of the family and protect the general welfare of the child, 42 Pa.C.S. § 6301(b), see In Interest of Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (1988), we cannot make the needs of the child paramount to due process requirements and the statutory mandate, as would the dissent (Dissenting Op., Johnson, J., p. 38, para. 2). We must err on the side of full protection of those interests, which the dissent ignores.
[1] § 6301(b) Purposes.  This chapter shall be interpreted and construed as to effectuate the following purposes:

(4) To provide means through which the provisions of this chapter are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced. (Emphasis added.)
[2] Even with the broad scope of review granted us, the occasion does arise wherein remand, or some other delay in resolution of the proceedings is necessary. See, e.g., In the Matter of Mark T., 296 Pa.Super. 533, 442 A.2d 1179 (1982) (remand for determination of fitness of non-custodial parent prior to adjudication of child as delinquent). Such delays are not uncommon in custody matters.
[1] The mother also argues that the trial court erred by finding clear and convincing evidence that her child was dependent, and by placing the child in a foster home rather than immediately placing the child with her great-grandparents. I agree with the majority that these claims are without merit.