573 A.2d 1077

**In the Matter of Brandon SMITH.**

**Appeal of Brandon SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued June 19, 1989.

Filed April 20, 1990.

Dennis M. Abrams, Bala Cynwyd, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, ROWLEY, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

CAVANAUGH, Judge:

This appeal arises from a dispositional order of the Court of Common Pleas of Philadelphia County, entered after appellant had been adjudicated delinquent on charges of aggravated assault, possession of an instrument of crime, and violation of the Uniform Firearms Act.

The charges arose from an incident during which Perry Stewart was shot in the leg while attempting to intervene in a disturbance between several individuals outside his home. Stewart was taken to the hospital where, some hours later, the police brought appellant for identification. Stewart recognized appellant as his assailant, and subsequently identified him at an adjudicatory hearing.

At the adjudicatory proceeding appellant was represented by the Public Defender's Office. Testimony was taken and, at the conclusion of the hearing, appellant was found to be delinquent. Post-trial motions were filed in which counsel alleged, *inter alia,* her own ineffectiveness. New counsel was appointed, post-trial relief was denied, and appellant was ordered to be committed to the Glen Mills School. After the denial of relief, post-trial appointed counsel withdrew and present counsel entered his appearance on behalf of appellant. This direct appeal followed.

The issues presented all concern the caliber of representation appellant received from trial counsel—the allegation being that appellant's attorney, in various respects, was derelict in her stewardship of the case. Appellant's ability to present these assertions is predicated upon the right of juveniles to receive effective assistance of counsel once the right to any counsel has attached. It is the existence of this right which appellant now argues.[1] This appears to be an issue of first impression in Pennsylvania.

The United States Supreme Court concluded in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), that certain constitutional guarantees, including the right to assistance of counsel, were to be extended to juveniles. In

---

1. Although this issue was presented below, the trial court declined to address it.

so holding, the Supreme Court made clear its determination that the quality of representation to be provided was not in question:

> A proceeding where the issue is whether the child will be found to be "delinquent" and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make *skilled* inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step in the proceedings against him."

387 U.S. at 36, 87 S.Ct. at 1448 (footnotes omitted, emphasis added).

In a further exploration of the necessity for appointment of counsel, the Report by the President's Commission on Law Enforcement and Administration of Justice, "The Challenge of Crime in a Free Society" (1967), is quoted at length in *Gault*. Pertinent to the question before us is the following statement:

> The Commission believes that no single action holds more potential for achieving procedural justice for the child in the juvenile court than provision of counsel. The presence of an independent legal representative of the child, or of his parent, is the keystone of the whole structure of guarantees that a minimum system of procedural justice requires. The rights to confront one's accusers, to cross-examine witnesses, to present evidence and testimony of one's own, to be unaffected by prejudicial and unreliable evidence, to participate meaningfully in the dispositional decision, to take an appeal have substantial meaning for the overwhelming majority of persons brought before the juvenile court *only if they are provided with competent lawyers who can invoke those rights effectively.*

387 U.S. at 38 n. 65, 87 S.Ct. at 1449 n. 65 (emphasis added).

In Pennsylvania, the right of a juvenile to assistance of counsel has been codified in the Juvenile Act, 42 Pa.C.S.A.

§ 6337. To assume that what is meant by assistance of counsel does not include the concept of able, effective representation is to ascribe to the statute a ludicrous result, that is, that such counsel need not be able to perform appropriately, or indeed at all, to fulfill the legislative mandate. The right to counsel prescribed by the Juvenile Act must be read *in pari materia* with the Rule of Statutory Construction, 1 Pa.C.S.A. § 1922(1), which specifies that:

> In ascertaining the intent of the General Assembly in the enactment of a statute, the following presumptions, among others, may be used.
>
> > (1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

*See also, Gruver v. Gruver*, 372 Pa.Super. 194, 539 A.2d 395 (1988).

In *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967), and in its progeny, our Supreme Court has reiterated that the right to counsel's assistance must also include the right to effective assistance. Clearly, it is a fundamental tenet of our system of jurisprudence that, once any right to representation has been established, that representation must be constitutionally adequate. *Id.*, 427 at 601, 235 A.2d at 351. That this is true may be seen from examination of the effective assistance right in other contexts.

The right of a juvenile to effective assistance of counsel has been addressed in *dicta* by this court in *In re DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977). Speaking for an *en banc* court, Judge Spaeth stated:

> [s]ince this is not a purely criminal case, the doctrine of ineffectiveness of counsel is not automatically available. A criminal defendant's right to effective counsel is based on the Sixth Amendment of the United States Constitution, made applicable through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). A child's constitutional

rights in a juvenile proceeding are based entirely on the Due Process Clause of the Fourteenth Amendment. *Re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Thus, the standard for determining whether the right to counsel has been denied may be different depending on whether the defendant is a criminal defendant or a juvenile.

*Id.* 249 Pa.Super. at 154–155, 375 A.2d at 806.

However, in light of the development of the law relating to the right to effective representation by counsel, the possible effect of the divergent sources of the right to counsel mentioned in *DelSignore* has become a distinction without a difference.

Those cases in which this court has found the right to effective assistance of counsel where questions of paternity are involved offer an apt parallel, as they too are civil proceedings which involve the possible loss of physical liberty. In *Corra v. Coll*, 305 Pa.Super. 179, 451 A.2d 480 (1982), this court concluded that due process compelled the appointment of counsel for indigent defendants in civil paternity suits. In so holding, we determined that "the civil/criminal distinction is unavailing in determining whether counsel is constitutionally required." *Id.*, 305 Pa.Superior Ct. at 185, 451 A.2d at 483. In deciding whether the due process right to counsel in paternity matters included the right to effective assistance by that counsel, this court in *Banks v. Randle*, 337 Pa.Super. 197, 486 A.2d 974 (1984), noted, referring to *Gault*, that the civil/criminal dichotomy "has been abandoned in favor of an emphasis on the nature of the threatened deprivation." *Id.*, 337 Pa.Superior Ct. at 200, 486 A.2d at 976. Where the loss of liberty is implicated, counsel must be competent; otherwise, with effectiveness left out of the due process/representation equation, the right to counsel would become meaningless. *See also Kitrell v. Dakota*, 373 Pa.Super. 66, 540 A.2d 301 (1988).

In an even more apt analogue, the right to effective assistance of counsel has also been found to exist in the context of civil commitment proceedings. In *In re Hutch-*

*inson,* 500 Pa. 152, 454 A.2d 1008 (1982), our Supreme Court reasoned that "the involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be accomplished only in accordance with due process protections." *Id.,* 500 Pa. at 156, 454 A.2d at 1010 (citations omitted). The legislature provided, in the Mental Health Act, for counsel to be made available to the alleged incompetent; therefore,

> [f]or the legislatively-created right to representation to have meaning, counsel must be effective. Indeed, *without the guiding hand of competent counsel, appellee's right to representation would be rendered worthless.*

*Id.,* 500 Pa. at 157, 454 A.2d at 1011 [Emphasis supplied.] Further echoing the sentiments of *Gault,* our Supreme Court emphasizes that without adequate counsel, other rights involved in due process, e.g., to cross-examine and confront witnesses, go unexercised.[2]

It is important to emphasize the nature and procedural posture of this case. There is no question that at issue is appellant's interest in maintaining his physical liberty. In an instance of a juvenile's commitment to Glen Mills Diagnostic Center this court has noted, "A juvenile has the same substantial interest in retaining his liberty as an adult." *In Interest of Davis,* 377 Pa.Super. 46, 546 A.2d 1149 (1988). This case is before us on a direct appeal from the adjudication and disposition of delinquency. It is the sole means available to a juvenile to challenge the legality and propriety of the proceedings and outcome of the juvenile court.

**2.** Concern for the liberty and due process interests of children has led to the application of principles normally reserved for the adult offender. *See, In Interest of Davis,* 377 Pa.Super. 46, 546 A.2d 1149 (1988), (an en banc panel of this court extended the right of confrontation to a juvenile whose probationary status was revoked on the basis of hearsay testimony); *In re Becker,* 370 Pa.Super. 487, 536 A.2d 1370 (1988) (analysis of amendment to juvenile petition same as that under Pa.R.Crim.P. 229 relating to criminal cases); *In re Saladin,* 359 Pa.Super. 326, 518 A.2d 1258 (1986) (in determining existence of conflict of interest in representation at juvenile adjudicatory hearing same standard applies as to adults.); *In Interest of Mellott,* 327 Pa.Super. 396, 476 A.2d 11 (1984) (suppression of statement at adjudicatory hearing where juvenile not warned of *Miranda* rights prior to custodial interrogation).

We are not faced with a collateral attack brought after appellate review on a direct appeal. Rather the issue of effectiveness is before an appellate tribunal for the first time.

The gravity with which juvenile dispositions are regarded is evidenced by the fact that they may be considered by a court in determining sentence in a subsequent adult criminal case. *Commonwealth v. Krum,* 367 Pa.Super. 511, 533 A.2d 134 (1987); 42 Pa.C.S.A. § 6354(b)(1). The effect a juvenile record may have upon one's later treatment in the criminal justice can be substantial.

■ We conclude that a juvenile who is the subject of a delinquency petition is entitled to effective assistance of counsel at the adjudicatory and dispositional phases of juvenile proceedings.

■ Having determined that the juvenile has the right to effective assistance of counsel, the next issue is determination of the standard by which competency is to be measured. We find that, given the near-identity of interests of a defendant in a criminal case and a juvenile in delinquency proceedings, the same standard for both sorts of matters should be applied.

The standard applicable to adult criminal cases has been articulated as follows:

The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. *Commonwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985). If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interest. *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Finally, we require that the defendant establish how counsel's commission or omission prej-

udiced him. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

In making assertions of ineffectiveness, we also require that an offer of proof be made alleging sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective. This is so because we frown upon considering claims of ineffectiveness of counsel in a vacuum. *Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981).

*Commonwealth v. Durst*, 522 Pa. 2, 3, 559 A.2d 504, 505 (1989).

The constitutionally-mandated similarities between criminal and delinquency proceedings make application of a uniform standard desirable. The liberty interest of a juvenile which is at stake in a delinquency matter requires application of the same advocacy skills as those employed by counsel in criminal cases. Delinquency proceedings, in terms of both procedure and potential outcome, are closer in nature to criminal cases than they are to cases involving issues of dependency and termination of parental rights. The substantive issues of law involved in delinquency adjudications and dispositions originate from the criminal law.[3] Therefore, we find that analysis of the effectiveness of counsel in juvenile matters requires application of the same standard as that employed in review of adult criminal cases.

The next issue before us is whether claims of error, specifically a challenge to the effectiveness of counsel's representation, pertaining to juvenile proceedings must be preserved through the filing of post-trial motions in the lower court. The Juvenile Act does not provide for the

**3.** A "delinquent act" is defined as follows:
> (1) The term means an act designated a crime under the law of this Commonwealth, or of another state if the act occurred in that state, or under Federal law, or under local ordinances.
> (2) The term shall not include:
> (i) the crime of murder; or
> (ii) summary offenses, unless the child fails to pay a fine levied thereunder, in which event notice of such fact shall be certified to the court.

42 Pa.C.S.A. § 6302.

filing of post-trial motions. Nor does the Act itself provide for a right of appeal. Rather the right of appeal generates from the Pennsylvania Constitution, Article V, section 9, which guarantees the right of appeal from a court of record to an appellate court. Case law has established that the appeal properly lies from the dispositional order and not from adjudicatory order. *In the Interest of McDonough*, 287 Pa.Super. 326, 430 A.2d 308 (1981). The question remains whether the requirement of post-decision motions should be imposed in juvenile proceedings.

The purpose of post-trial motions is to allow a trial court the opportunity to consider and rule upon allegations of error committed by it. The interest of judicial integrity and economy are served where the court whose actions are challenged is afforded the chance to address the concerns of the losing party.

In criminal matters the filing of post-verdict motions to preserve issues for appeal is mandated by Pa.R.Crim.P. 1123. The Rules of Criminal Procedure do not apply to juvenile matters. *In re Becker*, 370 Pa.Super. 487, 536 A.2d 1370 (1988); Pa.Rule Crim.P. 1. We find, however, that the application of a post-adjudication motion requirement in juvenile cases would serve the same interest of economy and review as it does in criminal cases. Post-adjudication motions were filed in this case and it appears that this practice in juvenile cases is not uncommon.

Additional reasons for requiring post-adjudication motions are the applicability of the waiver doctrine [4] and the finality of the direct appeal process in juvenile matters. Since issues may not be presented and reviewed on direct appeal unless they have been properly preserved below, the post-adjudication motion affords both the juvenile and the court the opportunity to address all issues which may be the subject of possible appeal. The fact that there exists no statutory collateral appeal from juvenile matters militates in favor of questions of ineffective assistance of counsel

4. See, *In re DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977).

being fully considered at both the trial and direct appeal levels.

The absence of a post-adjudication motion procedure would result in delay and, in some cases, complete preclusion of appellate review of issues in juvenile matters. Without application of post-adjudication motions, the direct appeal procedure would not resolve effectiveness issues postured similarly to the one here under scrutiny. Without them, trial counsel, who was replaced after arguing her own ineffectiveness in post trial motions, would not have been able to present this claim to the trial court, hence no new counsel would have been appointed for the appeal. Instead, we would hear the issue of alleged ineffectiveness, and would be required to return the case to the trial court for appointment of new counsel and a hearing. Conversely, were counsel unprepared, for whatever reason, to proclaim her own ineffectiveness, no such allegation would ever appear before us. Since the waiver rule does in fact exist and is applied in juvenile dispositions, the badly represented child would have no avenue of redress unless the broad scope of review already afforded this court in juvenile matters were further extended to include the power to raise all questions of counsel's stewardship *sua sponte*. The mechanism of post-adjudication motions at the trial court ensures both timely and thorough review of claims of ineffectiveness of counsel.

We conclude, therefore, that the procedure used in the instant case was proper, and that post-adjudication motions are the appropriate means by which allegations of ineffectiveness of counsel are brought before the trial court and are preserved for appellate review.[5]

We now turn to appellant's specific allegations of his attorney's incompetence. It is first contended that appellant's trial counsel was ineffective in waiving a viable

5. A panel decision of this court, *Commonwealth v. Clay,* 376 Pa.Super. 425, 546 A.2d 101 (1988), stated that post-verdict motions were not the correct means by which to preserve issues for appeal in a juvenile matter. To the extent that *Clay* is inconsistent with the holding of the instant case it is disapproved.

suppression motion. Appellant's trial counsel had filed a pre-trial motion to suppress his arrest and/or identification. However, at the hearing on March 23, 1987, it became known that the arresting officer was unavailable to testify, despite a subpoena by the Commonwealth, due to his involvement in another trial. Thus a request for a continuance by the Commonwealth was necessitated, and in response thereto, defense counsel waived the motion to suppress. Counsel's basis for her waiver of the motion was her fear that, if the case were continued, the defense witnesses would fail to appear at the future date. When she later filed post-trial motions on appellant's behalf, trial counsel cited her failure to pursue this motion as one of the grounds for alleging her own ineffectiveness.

On appeal, appellant claims that, had his attorney pursued the suppression motion, she could have challenged the identification procedure on the basis that his arrest was not supported by probable cause and the identification was inherently suggestive.[6] He now contends that his attorney's waiver of the suppression motion allowed both his arrest and the out-of-court identification to go unchallenged and that he was prejudiced thereby.

However, appellant has not shown that the suppression motion would have been successful. Even if it were true that the arrest was not supported by probable cause, an illegal arrest does not, by itself, provide a basis for suppressing identification evidence, since we cannot assume that were it not for the illegal arrest the defendant would never be required to face his accusers. *See, Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972); *Accord, Commonwealth v. Voss,* 333 Pa.Super. 331, 482 A.2d 593 (1984). The trial judge found appellant's contention to be meritless, concluding that although the hospital identification may have been suggestive, the victim never-

6. Since no physical evidence was seized, and appellant could not have suppressed his person as the product of an illegal arrest, *see Commonwealth v. Verdekal,* 351 Pa.Super. 412, 506 A.2d 415 (1986), he sought only to suppress the identification evidence as the fruit of his allegedly illegal arrest.

theless had an independent basis for making his in-court identification, having viewed appellant for at least five seconds during the commission of the assault. We agree. Thus, we find that appellant's claims with regard to the underlying issues concerning the legality of his arrest and the suppression of his identification by the victim lack arguable merit. As such, we cannot find trial counsel to have been ineffective in waiving the suppression motion.

■ Moreover, even were we to find the arrest and identification to have contained questions of arguable merit, counsel's decision to forego the suppression issue is a matter of tactics supportable by reference to appellant's best interests. As appellee points out, the arresting officer was unavailable to testify for the prosecution, and his absence could have been perceived as having an adverse effect on its case. Counsel was faced with a dilemma in which she was forced to weigh the possibility of her own witnesses' failure to appear at a later date against the definite absence of certain Commonwealth evidence. She chose the latter. As this court stated in *Commonwealth ex rel. Washington v. Maroney, supra* 427 Pa. at 604, 235 A.2d at 352–53:

> The test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weight the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

■ In his next argument, appellant alleges ineffectiveness in his trial counsel's failure to present supposedly exculpatory eyewitness testimony. Specifically, appellant alleges that counsel should have presented an eyewitness to the shooting who, according to a police report, told the officers at the scene that appellant was not the assailant.

When a defendant seeks to establish ineffectiveness of counsel for failure to call or investigate witnesses, he must supply a factual basis indicating (1) the identity of the

witnesses; (2) that counsel knew of the existence of the witnesses; (3) the material evidence that the witnesses would have procided; and (4) the manner in which the witnesses would have been helpful to his cause. *Commonwealth v. Torres,* 329 Pa.Super. 58, 477 A.2d 1350 (1984).

Instantly, the information necessary to meet three of the four prongs of the *Torres* test relies on material which we may not consider. Although the police report in question appears in appellant's reproduced record and is argued in appellant's brief, it is not contained in the official record which is the only source on which we may base our determinations. *Dorn v. Stanhope Steel, Inc.,* 368 Pa.Super. 557, 534 A.2d 798 (1987). *See also Commonwealth v. Williams,* 357 Pa.Super. 462, 516 A.2d 352 (1986). It is therefore not persuasive. However, even assuming that the thoretically exculpatory material were available for appellate review, appellant does not allege that he interviewed the witness, that he actually had useful information, or that he would have testified on his behalf. *See Commonwealth v. Durst,* 522 Pa. 2, 559 A.2d 504 (1989) (no showing that allegedly exculpatory witnesses would have aided defense); *Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20 (1989) (testimony of absent witness must be presented by witness himself.) Moreover, another eyewitness testified on behalf of the defense that he had seen the shooter and it was not appellant. Therefore, the testimony not presented would merely have been cumulative, and counsel cannot be found ineffective for failing to present cumulative evidence. *See, Commonwealth v. Smillie,* 316 Pa.Super. 83, 462 A.2d 804 (1983).

█ Finally, appellant asserts his attorney's incompetence in failing to impeach Commonwealth witness Bernard Johnson with his prior inconsistent statement. He contends that since Johnson denied at trial having made a statement to the arresting officer that appellant was not the perpetrator, his credibility could have been impeached by the arresting officer, but that with the waiver of the suppression motion, the opportunity to present the officer's

testimony was lost. Since appellant failed to provide the court below with an opportunity to rule on this matter when first presented by current counsel, he has failed to preserve it for our review. *See, In re Del Signore,* 249 Pa.Super. 149, 375 A.2d 803 (1977).

However, even if not waived, this issue lacks merit. At trial, Johnson testified that appellant was not the shooter, and thus was a favorable defense witness. As the Commonwealth states, any reasonable attorney would have been satisfied with Johnson's trial testimony, considering it far more important than the issue of whether he had given police a similar account, and would not have wanted to destroy the credibility of a favorable defense witness. *See Commonwealth v. Smallwood,* 497 Pa. 476, 442 A.2d 222 (1982) (counsel properly did not present someone who would have undermined credibility of important defense witness).

Accordingly, we find that appellant was adequately represented at trial, and as such, his claims to the contrary must be defeated.

Order affirmed.

BECK, J., files concurring and dissenting opinion, joined by ROWLEY, J.

TAMILIA, J., files concurring and dissenting opinion, joined by CIRILLO, Presiding Judge.

POPOVICH, J., files concurring statement.

JOHNSON, J., files concurring and dissenting opinion.

BECK, Judge, concurring and dissenting:

I join Judge Cavanaugh's plurality opinion insofar as the plurality recognizes a right to the effective assistance of counsel in juvenile delinquency proceedings. I also agree with the plurality that effectiveness of counsel's performance in this context should be measured according to the *Pierce* standard. *See Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

Juvenile delinquency proceedings do not implicate the special concerns that require adjustment of the *Pierce* standard when evaluating the effectiveness of parental counsel in proceedings for the termination of parental rights and in dependency proceedings. *See Adoption of T.M.F.*, No. 2602 Phila.1988, 392 Pa.Super. 598, —— — ——, 573 A.2d 1035, 1054–1055 slip op. at 14–16 (Pa.Super. filed Mar. 30, 1990) (en banc) (Beck, J., concurring); *In re J.P.*, No. 355 Pgh. 1988, 393 Pa.Super. 1, 32 ——, 573 A.2d 1057, 1072 (1990) (en banc) (Beck, J., concurring). In parental termination cases and dependency cases, the right of the parent to the effective assistance of counsel must be balanced against the state's interest in ensuring that a third party—the child— enjoys the benefits of a stable home environment. In juvenile delinquency proceedings, the party who is asserting the right to the effective assistance of counsel *is the child.* Moreover, a child who is adjudicated delinquent may be removed from the custody of caring and responsible parents and placed in a state institution for juvenile offenders. Every child should be provided with the services of an able attorney before being subjected to the stigma and potential deprivation of liberty associated with being labeled a juvenile delinquent. In my view, relaxing the test for assessing the performance of counsel for the child in the hope of furthering the best interest of the child would be a mistake. Such an approach would represent a retreat from *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), which emphasized the central importance of counsel's role in ensuring that the juvenile receives a fair hearing.

Furthermore, I do not believe that application of the *Pierce* standard will lead to a recriminalization of juvenile proceedings. Although *Pierce* was a criminal case, the standard it embodies is a flexible one. An appellant must establish: 1) that the issue forming the basis of the assertion that counsel was ineffective is of arguable merit; 2) that the particular course chosen by counsel had no reasonable basis designed to effectuate the client's interest; and

3) that the client was prejudiced by counsel's error. *Commonwealth v. Durst*, 522 Pa. 2, 3, 559 A.2d 504, 505 (1989). This three-part test should be applied with full regard for the features that distinguish juvenile proceedings from adult criminal trials.

Not every omission by counsel that would require the grant of a new criminal trial would necessarily require the grant of a new adjudicatory hearing. In some cases, a claim may have arguable merit in the criminal context but not in the juvenile context. Rights of a juvenile defendant are not coextensive with rights of an adult criminal defendant. *See McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). Moreover, a review of the reasonableness of the course chosen by counsel and of the prejudicial impact of counsel's actions must take into account such factors as the informality of delinquency proceedings and the active role of the family court judge in ensuring an accurate determination. By conducting a sensitive inquiry, we may afford juveniles the benefits of the *Pierce* standard without compromising the uniquely important features of the juvenile justice system.

I part company with the plurality on the question of post-trial motions. As we observed in *Commonwealth v. Clay*, 376 Pa.Super. 425, 429, 546 A.2d 101, 103 (1988), neither the Juvenile Act nor the Pennsylvania Rules of Civil Procedure nor the Pennsylvania Rules of Criminal Procedure authorize the filing of post-trial motions following an adjudication of delinquency. The plurality would reach out to disapprove *Clay* and impose a new post-trial motions requirement without basis in rule or statute. I agree with my colleagues President Judge Cirillo, and Judges Rowley, Tamilia and Johnson that it is inappropriate for the Superior Court to take such action. *See* Concurring and Dissenting Opinion by Johnson, J., op. at 76–77; Concurring and Dissenting Opinion by Tamilia, J., op. at 61–63 (joined by President Judge Cirillo).

In the first instance, the plurality is attempting to engage in rule making, a function within the exclusive jurisdiction

of the Pennsylvania Supreme Court. *See Commonwealth v. Mason*, 507 Pa. 396, 400–03, 490 A.2d 421, 423–24 (1985) (quoting *Commonwealth v. Walls*, 255 Pa.Super. 1, 5, 386 A.2d 105, 106–07 (1978)).

Next, if we require post-trial practice in the context of ineffectiveness of counsel, there is no rationale for not imposing it as a requisite for challenging all trial errors. Weighing the value of mandatory post-trial practice giving the trial court the opportunity to correct its trial errors against the burden of post-trial practice on the juvenile court, I find the imposition of post-trial practice unwise. It is the rare case in which the trial court reconsiders a matter and reverses itself as a result of post-trial practice. The trial court can be advised of purported trial error under Pennsylvania Rule of Appellate Procedure 1925. This Rule affords the trial court an opportunity to address purported errors in its opinion to the appellate court.

Moreover, the plurality fails to consider the practical consequences of imposing mandatory post-trial practice on delinquency cases. The plurality's proposed post-trial motions requirement would create a waiver trap for unwary counsel. Inevitably, many attorneys would fail to file timely post-trial motions setting forth all of the claims for relief of their juvenile clients. Some attorneys would neglect to file such motions due to sheer inadvertence. The person who will pay the price for these omissions by counsel is the juvenile. An adult defendant whose claims are waived in post-trial motions may at least seek redress under the Post Conviction Relief Act, 42 Pa.Cons.Stat.Ann. §§ 9543–46 (Purdon Supp.1989). The Post Conviction Relief Act affords no remedy to juveniles who have been adjudicated delinquent and the availability of a common law habeas corpus remedy is uncertain. *See In re DelSignore*, 249 Pa.Super. 149, 155 n. 3, 375 A.2d 803, 806 n. 3 (1977). Contrary to the suggestion of the plurality, the applicability of the waiver doctrine and the absence of a statutory collateral appeal from juvenile matters militate *against* requiring post-trial motions in delinquency cases.

Mandatory post-trial practice would also have the negative effect of increasing the work load of the family court and delaying the dispositional stage of the delinquency proceedings without adding to the integrity or correctness of the proceeding in the juvenile court. In cases involving children, time is of the essence; the period between adjudication of delinquency and disposition should be kept short in order to maximize the juvenile's chances for successful rehabilitation. A post-trial motions requirement would tend to delay final disposition and thereby undermine the juvenile justice system's rehabilitative goals.

Finally, the timing of the plurality's decision is curious. Significant segments of the legal community have come to believe that even within the criminal and civil spheres the disadvantages of mandatory post-trial practice far outweigh the advantages. Supreme Court advisory committees have published proposals that would substantially restrict the scope of post-trial practice in this Commonwealth. *See* Criminal Procedural Rules Committee Proposed Amendments to Rules of Criminal Procedure (August 9, 1988); Civil Procedural Rules Committee Recommendation No. 91; Domestic Relations Committee Recommendation No. 6.

In summary, I join the plurality in recognizing an alleged juvenile delinquent's right to the effective assistance of counsel. I join President Judge Cirillo, and Judges Rowley, Tamilia, and Johnson in reaffirming that post-trial motions practice does not apply in delinquency cases.

ROWLEY, J., joins.

TAMILIA, Judge, concurring and dissenting:

In this appeal from the adjudication and disposition of a juvenile charged with aggravated assault, possession of an instrument of crime and violation of the Uniform Firearms Act, the appellant focuses on the single issue of counsel ineffectiveness and argues the adjudication of the trial court should be vacated and the case remanded for a new trial. The majority treats this case as a seminal case in

determining the applicability of the concept of ineffectiveness of counsel to juvenile proceedings. As such, I believe our review and direction must paint on a broader canvas and consider the propriety of raising the issue by post-trial motions, as suggested by appellant, and the disparity between adult and juvenile procedures generally including the Post Conviction Relief Act proceedings available to adults but not juveniles.

I agree with the majority that this Court should review the effectiveness of counsel, but I disagree with the majority's approach in adopting the standards applied to a criminal proceeding in this review. The difficulty in the approach used by the majority is that there is no vehicle by which the appellate court can review objectively or test the effectiveness of counsel in the juvenile proceeding as is the case with a criminal proceeding. Rule 1 of the Pennsylvania Rules of Criminal Procedures provides:

**Scope of rules.**

(a) These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings.

At the very outset it is apparent the criminal rules do not govern the procedure either pretrial, during trial or post-trial in relation to juveniles. Additionally, since the Post Conviction Relief Act is incorporated in the Rules of Criminal Procedure, there is no basis for proceeding under that Act to determine whether or not a fundamental right has been violated which is nonwaivable as to a juvenile proceeding. It would, therefore, appear that the concept of ineffectiveness of counsel tested according to the standard provided by the adult criminal proceedings is not adaptable to the juvenile proceeding.[1] I believe the majority is correct in its determination that effectiveness of counsel should be as-

---

**1.** The majority acknowledges these deficiencies but would create procedural rights to post-trial proceedings which have been specifically rejected by the legislature in its promulgation of the Juvenile Act of Dec. 6, 1972 (No. 333) as codified in the Judicial Code, 42 Pa.C.S.A. 6301 *et seq.*, and likewise rejected by the Supreme Court Criminal Rules Committee.

sured to juveniles just as it is assured to adults, but since the juvenile proceeding is quasi criminal and the United States Supreme Court has viewed on balance that all of the procedures available to the adult are not necessary in the juvenile proceeding, to bring into play the technical application of the ineffectiveness doctrine in these cases would be unnecessary and perhaps undesirable.

The seminal decision of *In re: Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), established that juveniles are entitled to the assistance of counsel before they can be properly adjudged delinquent. However, the Supreme Court did not extend to the juveniles all rights constitutionally guaranteed to adults. It created a standard for juveniles in which the benefits accorded to a juvenile in the delinquency proceedings were balanced against the need for certain constitutional protections and the court made a clear statement in *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971), that the standard to be applied in determining what protection a juvenile should have is one of fundamental fairness. The *McKeiver* case is critical in that it determined the full panoply of protections accorded the adults in the criminal proceeding including the right to a jury trial would not improve the quality of justice for a juvenile and might well impede the rehabilitative process by encouraging the procrastination, delays and technical diversions employed in the criminal justice system. I believe the same concept should be applied to our approach to the effectiveness issue as related to juveniles.

The problem encountered by approaching this issue in the same manner as that used in the adult criminal procedure is pointed out by the appellant in insisting that the only manner in which this issue should initially be raised is by a post-adjudication hearing similar to that of adults in post-trial motions. In this case, the trial court had such a hearing which was not required and should not have been granted. Since Rule 1 of the Rules of Criminal Procedure unequivocally stated the rules do not apply to juveniles (with the exception to those proceedings in Magistrate's

Court) and *In the Interest of DelSignore*, 249 Pa.Super. 149, 375 A.2d 803 (1977), held the Post Conviction Hearing Act, 42 Pa.C.S. § 9541 *et seq.*,[2] does not apply to juveniles, the approach to treating ineffectiveness in a similar fashion as that utilized in the criminal court simply is not possible. The argument made by appellant that if this effectiveness issue is not presented at a post-trial motion hearing, there will be delay in obtaining adequate review and the child would be subject to "rehabilitation" when rehabilitation might not be needed. This argument fails in that there should be no distinction between a claim of ineffectiveness of counsel and any other claim which would support an appeal. Prior to the present enactment of the Juvenile Act, 42 Pa.C.S. § 6301 *et seq.*, there was a provision that a rehearing would be granted upon request in a juvenile proceeding before a case would be subject to appeal.[3] The legislature in its wisdom determined that such post-trial hearings were not essential and that direct review, as in other cases relating to children and families in support, custody and termination cases, is the way of assuring the most expeditious resolution for correcting errors in juvenile proceedings. If we permit post-trial motions and reconsideration of juvenile cases in matters relating to effectiveness of counsel, we can not prevent similar demands, based on the appellant's reasoning, for claims as to sufficiency of evidence, weight of the evidence, trial error, prosecutorial misconduct, improper sentence or any of the other myriad claims upon which an appeal could be founded.[4] I would not provide for post-trial motions as a means of getting to

2. Effective April 13, 1988, the Pennsylvania Legislature repealed in part and substantially modified in part the Post Conviction Hearing Act, renaming it the Post Conviction Relief Act. Act of April 13, 1988, No. 47 § 3, 1988 Pa.Legis.Scrv. 227, 42 Pa.C.S. §§ 9541–9546.

3. Act of 1933, June 2, P.L. 1433, § 15, 11 P.S. § 257 (repealed) Act 1972, Dec. 6, P.L. 1464 (repealed) Act 1978, April, 28 P.L. 202.

4. From reports filed in the Pennsylvania Bulletin, 18 Pa.B. 1111 *et seq.*, it appears the Rules of Criminal Procedure are to be amended to impose rigid time restraints on post-trial motions, with consideration to eliminating them entirely in the future because of the serious delay occasioned by the procedures embodied in Pa.R.Crim.P. 1123. **POST VERDICT MOTIONS.**

this issue before the appeal to Superior Court under any circumstance. The impact on judicial time and efficiency would be immeasurable.

Since ineffectiveness of counsel cannot be raised in the trial court by trial counsel and it cannot be construed to be an issue which must be preserved for review or it would be' waived, appellate counsel may raise the issue of effectiveness of trial counsel on direct appeal if the basis for ineffectiveness appears in the record of the juvenile proceeding. Case law dictates that the ineffectiveness issue be raised at the first opportunity when different counsel than trial counsel is available to do so. *Commonwealth v. Hubbard*, 472 Pa. 259, 372 A.2d 687 (1977). In a juvenile case, that can only be on direct appeal. Were it not for the doctrine of waiver, the need to examine conduct of a trial which innured to the prejudice of the juvenile would not require us to call into play the "extraordinary circumstances" which justify the juvenile's failure to raise the issue in a timely fashion. Waiver was held to apply to juveniles in *In re Cowell*, 243 Pa.Super. 177, 364 A.2d 718 (1976), and recognized by *DelSignore*, supra. Repudiation of the waiver doctrine and return to the doctrine of fundamental error in juvenile cases could eliminate this problem. This could be the means adopted by this en banc panel, and I would so recommend. On closer analysis, however, it is not necessary to reintroduce the doctrine of fundamental error renounced by *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), since juvenile proceedings require a broad scope of review which in fact limits the application of the doctrine of fundamental error. Lest it appear that I am introducing a novel concept into .juvenile proceedings, I believe earlier determinations by the Supreme Court have held that proceedings. in juvenile cases involving the welfare of the child, in which the state has a paramount interest, require that Superior Court exercise its independent judgment after consideration of the entire record. A telling statement that would have direct applica-

tion here was made in *In re Salemno,* 369 Pa. 278, 85 A.2d 406 (1952):

> [W]here the issue is custody of a minor, it would be incongruous to limit the review when the issue arises under the Juvenile Court Law but require a full review when it arises under habeas corpus proceedings. It has been repeatedly held in habeas corpus cases involving the custody of a minor that *it is the appellate court's duty to examine all the evidence and reach an independent determination.* (Citations omitted.)

*Id.,* 369 Pa. at 282, 85 A.2d at 408.[5] I know of no case which repudiates this holding and believe it comports with the underlying philosophy of the Juvenile Act and our approach to juvenile matters in general. Thus regardless of the effectiveness of counsel, appellate counsel could point to the defects in the proceeding which would possibly warrant a new trial or reconsideration on the part of the juvenile without going through the more technical procedures engrafted from adult cases involving ineffectiveness of counsel.

In *DelSignore, supra,* this problem was touched upon but not resolved by the court which in footnote 3 of that case stated that presumably the ineffectiveness issue may be raised on direct appeal by analogy to the rule in criminal cases. As to PCHA proceedings, Judge Spaeth, the author of the Opinion, clearly recognized the fact that since post-conviction hearings are not available to juveniles, there is no appropriate remedy other than habeas corpus to raise such an issue. Since the Juvenile Court is not encumbered by procedural rules and is totally governed by the procedures contained in the Juvenile Act, *supra,* there appears to be no need to turn to techniques employed in criminal trials or in the collateral proceedings of the Post Conviction Relief Act to find an extraordinary basis upon which to review

5. While *In re Salemno* was concerned with a dependent child and this case involves a delinquent child, since the issue revolves around the custody of the child and habeas corpus principles are implicated, the scope of review is the same.

issues, review of which would be prevented under the waiver doctrine.

In summation, if we retain the holdings of *Cowell* and *DelSignore* that the waiver doctrine applies in juvenile cases, and thus prevents issues not preserved from being raised on appeal, while the Juvenile Act and Rules of Criminal Procedure prevent application of the Rules to juvenile proceedings, and PCHA/PCRA proceedings do not apply to juvenile cases, appellate review of ineffectiveness issues does not fit the procedures adapted to criminal cases. Since there appears to be no way to circumvent this problem and since the majority is correct that effective counsel is necessary for an adequate juvenile proceeding, it appears that the least complicated approach would simply be for this Court to exercise a broad scope of review to determine whether the hearing comported with fundamental fairness in compliance with due process.

The line of cases from *Gault* to the present, reviewed by the United States Supreme Court, requiring fundamental rights to be provided for juveniles, but not necessarily by the same procedures employed in the criminal court, would indicate the Supreme Court believes there is merit in having the trial courts and appellate courts in the individual states make determinations as to juveniles based on fundamental fairness and due process within the context of juvenile and not criminal proceedings. It seems to me that due process requires that errors in the juvenile proceeding be correctable whether or not objection has been made at the trial court and under the analogy to habeas corpus proceedings. I would not want to see this Court move toward a recriminalization of the Juvenile Proceedings by adopting criminal procedures which are under a cloud and being revamped or eliminated in criminal proceedings. The new provisions enacted by the General Assembly for the PCRA, 42 Pa.C.S. § 9543(a)(2)(ii) provide that a petitioner seeking relief on a claim of ineffective assistance of counsel must plead and prove that counsel's stewardship "so undermined the truth-determining process that no reliable adjudication of guilt or

innocence could have taken place." This dramatically restricts the inquiry to a review of the record as a whole, eliminating the layered process of analysis developed in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967) and *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). In *Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989), the Supreme Court reversed a panel of this Court which vacated a conviction because trial counsel failed to interview potentially exculpatory witnesses. It appears that in emphasizing that ineffectiveness may not be alleged in a vacuum, the Supreme Court has moved very close to holding that despite claimed ineffectiveness, if the record on the whole supports the conviction beyond a reasonable doubt, the claim will fail. This appears to be the same position taken by legislature in its recent enactment (PCRA) cited above. Additionally, in *Commonwealth v. Bobby Joe Lawson*, 519 Pa. 504, 549 A.2d 107 (1988), the Supreme Court recently closed the door to multiple post conviction relief appeals indicating impatience with a hypertechnical approach. The legislative standard above appears to be one which is easily adaptable to appellate review of juvenile cases and would, pursuant to a broad scope of review, assure the fundamental fairness required without following the formula (which may not be applicable) suggested by the majority.

Since ineffectiveness of counsel will never be raised in juvenile matters, except in the context of a direct appeal, and post-trial motions or PCRA proceedings are not available, that one opportunity must provide for a broad review of the record if the issue is raised on appeal that trial counsel's stewardship so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. This is the appropriate time for that determination and is similar in delinquency matters to the broad scope of review provided in custody matters. In *In Interest of Leonardo*, 291 Pa.Super. 644, 436 A.2d 685 (1981), this Court held "[b]ecause the purposes and procedures of the two systems differ in important ways, a

proceeding held pursuant to alleged violations of the Juvenile Act cannot also serve the function of a proceeding held pursuant to alleged violations of the Crimes Code." *Id.*, 291 Pa. Superior Ct. at 648, 436 A.2d at 687. This is clearly evident when we look at the Juvenile Act, *supra,* which provides significant differences in the treatment of juveniles as compared with adult criminal proceedings (§ 6336(a), informal hearings without jury; § 6336(b), non-adversarial in that the district attorney need not be present except at the request of the court; § 6336(c), no need to record hearing unless ordered by the court or requested by the parties; § 6336(d), exclusion of the public; § 6637, counsel may be waived by parents; § 6352(b), limitations on placement; § 6353, limitation on length of commitment; and § 6354, adjudication not to be construed as a conviction of a crime and does not impose civil disability).

The Supreme Court, in *In re Wilson,* 438 Pa. 425, 264 A.2d 614 (1970), considered the issue of effectiveness of counsel, raised for the first time on appeal, indicating counsel was inadequate, and while recognizing that issue, declined to rule on that basis and turned to the denial of rights guaranteed under *Gault* in resolving the case. The underlying failure of the trial court in a juvenile proceeding to meet the standards of fairness imposed by the Juvenile Act and pursuant to *Gault,* whether counsel was effective or not, cannot be ignored by this Court on appeal. The doctrine of parens patriae is battered but not dead. This appears to be the procedure which is most easily adapted to juvenile cases and indeed is that procedure which has been followed so well thus far as to limit any serious concern as to the effectiveness issue. Juvenile proceedings have never been purely adversarial and in theory and in practice the district attorney need not participate, with the trial judge assuming a much expanded role in the proceeding than in a criminal case. The informality of hearings, the fact that many if not a preponderance of hearings are held by masters, as permitted by the Juvenile Act, would mean that great numbers of juvenile cases would be assailable if the

technical approach applicable to criminal actions was applied to juvenile cases. At the same time, because of the waiver doctrine and the ease with which the ineffectiveness litany can be recited to preclude relief, the fairness required by *Gault* can easily be circumvented. Short of converting the juvenile proceeding into the technical equivalent of a criminal trial, the standard applied for testing effectiveness of counsel developed in criminal proceedings cannot work. I would, therefore, eschew those tests developed for gauging effectiveness announced by *Maroney* and *Pierce* (underlying issue of arguable merit, whether course of action chosen by counsel had a reasonable basis designed to effect the client's best interest, and whether he was actually prejudiced by counsel's ineffectiveness). It is not necessary to follow these court structured guidelines for criminal proceedings to determine whether counsel was *competent* pursuant to *Gault* in the context of the juvenile proceeding.

The differences clearly mandated in the Juvenile Act as to the manner of dealing with juveniles after disposition, which are not available to adults, eliminate the need for PCRA inquiries. The juvenile dispositions are time-limited by short placements or sentences; jurisdiction is ended by the child attaining majority (sentences imposed before majority to continue until completed after 18 but no longer than 21) and provisions in the Juvenile Act require review hearings before any extension of commitment can be made; review hearings every six months and disposition review hearings at least every nine months are required. *See* 42 Pa.C.S. § 6353, Limitation on and change in place of commitment. Post Conviction Relief Act proceedings were enacted to provide a procedural means to routinely review claims of serious miscarriages of justice which were formerly only reviewable by habeas corpus actions. The Juvenile Act has built in procedures making such proceedings unnecessary.

Having proposed a procedure which will resolve the issues raised, whether they be ineffectiveness of counsel or failure to provide a fair hearing or failure of counsel to

object in à timely fashion, so as to permit appellate review of those issues, I concur with the result proposed by the majority and would affirm the decision of the court below. A review of the record, the evidence presented and the conduct of counsel in this case establishes there was no error in the finding of delinquency and the stewardship of counsel was not such as to undermine the truth determining process so that no reliable adjudication of delinquency could have taken place. There was no evidence to suppress under the circumstances of this case and counsel's failure to make timely objections in the fashion detailed by appellate counsel had no bearing on the hearing or its outcome and, therefore, the Order of the trial court must be affirmed.

When, at the end of the process, we add a review procedure tailored to adult ineffectiveness of counsel proceedings, which must presuppose a fully structured, detailed and delineated series of steps, processes and rights, which are enunciated in criminal rules and cases, to a procedure which is essentially different and to which these standards do not apply, we are inviting confusion or worse, recriminalization of the juvenile law. I do not believe we can apply the adult concept of ineffectiveness of counsel, as delineated by the majority, without incorporating, by indirection, requirements in juvenile cases not presently mandated by legislation or case law. In doing so, we destroy the inherent flexibility, expediency and fairness of juvenile philosophy, restrict the broad powers of the juvenile judge, incorporate the full antagonisms of the adversary system and turn more certainly from rehabilitation to punishment in disposition.

I believe the United States Supreme Court recognized these dangers in limiting its strictures on juvenile procedures, acknowledging that the less formal approach provided more advantages than disadvantages, more rehabilitation than punishment and society required a different approach to adults than juveniles. I am not willing to concede that we should turn away from this approach when it is apparent that most of the desirable techniques presently avail-

able in adult corrections were derived from advances in juvenile justice, and the superiority of juvenile justice proceedings and dispositional techniques continues *because* there has wisely been no across-the-board application of adult criminal process to the Juvenile Court. I believe the approach suggested in this Concurring and Dissenting Opinion continues to maintain the required balance of protecting the rights of the child and serving the interest of society while maintaining a benign proceeding to assure this process.

CIRILLO, President Judge, joins.

POPOVICH, Judge, concurring:

While I agree with the majority's determination that a juvenile has the right to effective counsel and that, in this case, counsel's stewardship was not deficient, I do so reluctantly.

To be sure, a juvenile, during the adjudicatory stages of a delinquency proceeding, is entitled to nearly the full panoply of due process safeguards accorded adult criminal defendants. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Terry*, 438 Pa. 339, 265 A.2d 350 (1970), aff'd 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); 42 Pa.C.S.A. § 6337; 42 Pa.C.S.A. § 6338; 42 Pa.C.S.A. § 6322(a). However, juveniles do not have an absolute right to all constitutional safeguards developed to protect adults accused of crimes. *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971); *Commonwealth v. Durham*, 255 Pa.Super. 539, 389 A.2d 108 (1978) (juvenile defendant not entitled to a jury trial).

The separate juvenile system was specifically created to provide for the treatment and rehabilitation of children and not for their punishment or confinement. 42 Pa.C.S.A. § 6301. In the past, juvenile court proceedings were considered mere civil inquiries to determine children's need for treatment, reformation and rehabilitation by the Commonwealth which acted as *parens patriae*. *Janct D. v. Carros*,

240 Pa.Super. 291, 362 A.2d 1060 (1976). And, although the child's procedural rights have been greatly expanded by the Supreme Court of the United States, the notions that the purpose of the juvenile system is to treat and rehabilitate the child and that the Commonwealth proceeds as *parens patriae* remain. *In re Gault*, 387 U.S. at 16, 87 S.Ct. at 1437; *Janet D. v. Carros*, 240 Pa.Super. 291, 362 A.2d at 1072–1073.

My concern is that, as the juvenile system becomes essentially identical to the criminal system, it evolves into an adversarial system, and the very qualities for which it was created—"every aspect of fairness, of concern, of sympathy, and of paternal attention"—will be lost forever. *McKeiver v. Pennsylvania*, 403 U.S. at 551, 91 S.Ct. at 1989. The Commonwealth is no longer the *parens patriae*, but now, through the adoption of adult criminal procedures, it is quickly becoming only a prosecutor. As our Supreme Court stated in *McKeiver v. Pennsylvania*, "[i]f the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." 403 U.S. at 552, 91 S.Ct. at 1989. Thus, I write separately to express my "disillusionment" and concern for our ever increasing departure from the original meritorious reasons for the creation of the independent juvenile system.

JOHNSON, Judge, concurring and dissenting.

I join in the result reached by the majority in affirming the order of August 28, 1987 committing Brandon Smith to the Glen Mills School. I dissent from so much of the majority opinion as declares that the ineffectiveness standard employed in review of adult criminal cases is applicable in juvenile matters. I also dissent from so much of the majority opinion as declares that post-adjudication motions are a means by which allegations of ineffectiveness may be brought before the juvenile hearing court.

The Honorable James J. Buckingham found seventeen year-old Brandon Smith delinquent on and guilty of the charges of aggravated assault, simple assault, recklessly endangering another person, possessing an instrument of crime and violation of the Uniform Firearms Act. On July 21, 1986, Perry Stewart had stepped outside his residence to investigate a disturbance. As a group of people came running towards Stewart's front door, Smith raised and aimed a gun towards one of the running persons. Smith shot Stewart in the calf of his right leg, causing an injury that resulted in two-and-one-half weeks of hospitalization, treatment with leg pins for five months and that left Stewart still on crutches at the adjudication hearing held eight months later. Following the delinquency adjudication, Smith was committed to Glen Mills School.

The majority relies upon two premises in support of its conclusion that the concept of ineffective assistance of counsel can be interposed in juvenile proceedings. First, a juvenile's right to due process cannot be adequately reviewed unless the quality of representation by the juvenile's attorney is directly examined. Second, the right to counsel necessarily involves a right to effective assistance of counsel which, in turn, can be reviewed applying the same standard developed and utilized in criminal proceedings. I disagree with both premises.

There is no doubt that the Due Process Clause is applicable in juvenile proceedings. The problem lies in ascertaining the precise impact of the due process requirement upon such proceedings. *In re Gault*, 387 U.S. 1, 13–14, 87 S.Ct. 1428, 1436–1437, 18 L.Ed.2d 527, 538 (1967). The Supreme Court has stated clearly that certain basic constitutional protections enjoyed by adults accused of crimes also apply to juveniles. *In re Gault*, 387 U.S. at 31–57, 87 S.Ct. at 1445–1459, 18 L.Ed.2d at 548–563 (notice of charges, right to counsel, confrontation, self-incrimination, and cross-examination); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (proof beyond a reasonable doubt);

*Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (double jeopardy).

The Constitution does *not* mandate elimination of all differences in the treatment of juveniles. See, *e.g., McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971) (no right to jury trial).

It is certainly true that the Juvenile Act contains an express provision regarding the *right* to counsel:

### § 6337. Right to counsel

Except as otherwise provided under this chapter a party is entitled to representation by legal counsel at all stages of any proceeding under this chapter and if he [or she] is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him [or her] ... If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

42 Pa.C.S. § 6337. There is nothing in the statutory provision which embraces the doctrine of effective assistance of counsel. I find no support in our caselaw for an enlargement of the statutory grant at this time.

The majority asserts that we have already found the "right to effective assistance of counsel where questions of paternity are involved." I must respectfully disagree. In *Corra v. Coll,* 305 Pa.Super. 179, 451 A.2d 480 (1982), we did nothing more than hold that appointed counsel was mandated in paternity proceedings where future loss of liberty might result. The *Corra* panel had no occasion to consider, or review, the effectiveness of counsel. It is true that a panel of this court, in *Banks v. Randle,* 337 Pa.Super. 197, 486 A.2d 974 (1984), stated: "It is axiomatic that the right to the assistance of counsel means the right to the *effective* assistance of counsel." 337 Pa.Super. at 202, 486 A.2d at 977. However, the only cases cited in support of that axiom by the *Banks* panel were cases involving criminal defendants. Within the context of the paternity trial facing the *Banks* panel, I believe it was error for the court to rely upon the practice in criminal proceedings to equate

assistance of counsel with effective assistance of counsel. The subsequent acceptance of the ruling set forth in *Banks v. Randle* by the panel in *Kitrell v. Dakota,* 373 Pa.Super. 66, 540 A.2d 301 (1988) did nothing to establish or strengthen the reasoning behind the rule. I continue to believe that *Banks v. Randle* and its progeny require re-examination.

Nor can I agree with the majority that "in light of the development of the law relating to the right to effective representation by counsel, the possible effect of the divergent sources of the right to counsel ... has become a distinction without a difference." Majority slip opinion, page 5. Our former president judge, the Honorable Edmund B. Spaeth was correct when he observed that a criminal defendant's right to effective counsel is based on the Sixth Amendment of the United States Constitution, made applicable through the Fourteenth Amendment. *In re DelSignore,* 249 Pa.Super. 149, 154–155, 375 A.2d 803, 806 (1977). Judge Spaeth went on to state:

> A child's constitutional rights in a juvenile proceeding are based entirely on the Due Process Clause of the Fourteenth Amendment.... Thus, the standard for determining whether the right to counsel has been denied may be different depending on whether the defendant is a criminal defendant or a juvenile.

*Id.*

The majority seemingly places great weight on *In re Hutchinson,* 500 Pa. 152, 454 A.2d 1008 (1982) in concluding that there no longer exists a criminal/civil dichotomy in matters of effective representation. I view that case as an exception which proves that the right to effective assistance does not follow automatically, but rather is applied in non-criminal cases only as necessary to assure adherence to the concept of due process.

In *Hutchinson,* our supreme court was required to balance the competing interests of the Commonwealth and of the individual in a civil commitment context. The court recognized that involuntary civil commitment of mentally ill persons constitutes deprivation of liberty and may be ac-

complished only in accordance with due process protections. *In re Hutchinson,* 500 Pa. at 156, 454 A.2d at 1010. Mr. Justice McDermott, speaking for the court, found that certain testimony of the examining psychiatrist was clearly hearsay, and such evidence was crucial in establishing whether the respondent presented a clear and present danger to others under the Mental Health Procedures Act.

Although the court used the failure of respondent's counsel to object to this hearsay testimony as evidence of counsel's ineffectiveness, the court could have reached the same result of remanding for a new hearing by applying a straight due process analysis. The involuntary commitment of a respondent based solely on the hearsay testimony of a single witness would be constitutionally prohibited without any regard to counsel's conduct. *In re Hutchinson,* 500 Pa. at 159, n. 8, 454 A.2d at 1011–1012, n. 8; *Commonwealth ex rel. Finken v. Roop,* 234 Pa.Super. 155, 173–174, 339 A.2d 764, 773–774 (1975). The individual's interest compels the conclusion that the exclusion of hearsay testimony is fundamental to the respondent's receiving a fair trial. *Id.*

Moreover, the seriousness of the deprivation of liberty and the consequences which follow an adjudication of mental illness make imperative strict adherence to the rules of evidence generally applicable to other proceedings in which an individual's liberty is at jeopardy. *Lessard v. Schmidt,* 349 F.Supp 1078, 1103 (E.D.Wis., 1972), vacated and remanded for more specific injunction sub.nom., *Schmidt v. Lessard,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). I therefore view *In re Hutchinson* as a case dealing directly with the denial of due process although unfortunately couched in terms of the so-called ineffective assistance of counsel.

In addition, I view the dissenting opinion by Mr. Justice (now Chief Justice) Nix as instructive on the difficulties which can arise when one seeks to overlay a criminal process standard on a civil proceeding such as the court faced in *In re Hutchinson.* In recognizing the clear differ-

ence between a criminal case and an involuntary civil commitment proceeding, Mr. Justice Nix observed that "the best interest of the client in [civil commitment mental health] cases is not necessarily served by striving to seek the client's release." *In re Hutchinson*, 500 Pa. at 159, 454 A.2d at 1012. Mr. Justice Nix's concern is addressed to the second prong of the three-prong ineffectiveness test, namely, whether the particular course chosen by counsel had any reasonable basis designed to effectuate the client's interest. *Commonwealth v. Durst*, 522 Pa. 2, 3, 559 A.2d 504, 505 (1989); *Commonwealth v. Bruner*, 388 Pa.Super. 82, 104, 564 A.2d 1277, 1287 (1989). The same concern might very well arise in considering the third prong, namely, whether the course of conduct worked to the client's prejudice. *Id.*

In *Hutchinson*, can we say with any assurance that the *release* of an alleged mental incompetent is *always* in the incompetent's best interest, even where counsel may be privy to facts demonstrating that the client poses a clear and present danger of harm to others or to himself or herself? In the case presently before us, can we say that the release and discharge of Brandon Smith would be in his best interest, especially if counsel knows or reasonably could know that the juvenile did, in fact, discharge the weapon which wounded Stewart and the juvenile would benefit from residency at Glen Mills School?

I am uneasy that the majority does not consider or weigh these issues. I believe that the counsel effectiveness standard espoused in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967) and its progeny, if applied to juvenile proceedings, is contrary to the whole concept of juvenile courts which were created in an attempt to depart from the traditional treatment of children as ordinary criminal defendants. I find nothing in *In re Gault, supra*, that compels a contrary conclusion. *Accord, Commonwealth v. Durham*, 255 Pa.Super. 539, 543, 389 A.2d 108, 110–111 (1978) (dissenting opinion, Price, J.).

Although the majority does not expressly say so, I would assume that they are in agreement with Judge Spaeth's

conclusion in *In re DelSignore, supra,* that the juvenile's constitutional rights are based entirely on the Due Process Clause of the Fourteenth Amendment. If this is so, I would prefer that the analysis go beyond finding that a ludicrous statutory result is reached if the right to representation by legal counsel found in the Juvenile Act is not meant to include the concept of able, effective representation. Majority opinion, page 43–45. I would agree that the purpose of providing representation is that such representation would be effective and helpful to both the juvenile and the court. However, this does not assist me in understanding how the absence of effective representation deprives the juvenile of due process in the context of a juvenile proceeding where the interests of all parties is directed towards the best interests of the juvenile.

It is not clear to me whether the majority relies upon statutory construction, the Fourteenth Amendment, or both, in order to reach its conclusion that the effective assistance of counsel standard is implicit in the right to counsel conferred by 42 Pa.C.S. § 6337. However, I do not believe that mere statutory construction, or pursuit of legislative intent, should suffice when seeking to establish and impose so important a concept as ineffective assistance of counsel into juvenile proceedings. Nor do I believe a principle born in the Sixth Amendment may become a Fourteenth Amendment stepchild without doing violence to sound jurisprudence.

I agree completely with my distinguished colleague, Judge Tamilia, that the concept of ineffectiveness of counsel measured according to the standard provided by the adult criminal proceedings is not adaptable to the juvenile proceeding for the reasons that Judge Tamilia points out. The Pennsylvania Rules of Criminal Procedure do not apply to juvenile proceedings. Pa.R.Crim.P. Rule 1(a). I share Judge Tamilia's concern that the majority would create procedural rights to post-trial proceedings which have been rejected by the legislature and by the Supreme Court Criminal Rules Committee. To the extent that such an effort by

this court impinges upon the general supervisory and administrative authority of the Supreme Court of Pennsylvania as found in Article 5, Section 10 of the Pennsylvania Constitution, I must disassociate myself from such an attempt. *Commonwealth v. Simmons*, 388 Pa.Super. 271, 277–278, 565 A.2d 481, 484–485 (1989).

The Honorable Samuel J. Roberts, in speaking for the Pennsylvania Supreme Court in *Commonwealth ex rel. Washington v. Maroney*, declared, "[A] statement of principle rarely solves concrete cases." 427 Pa. at 601, 235 A.2d at 351. His caution followed his observation that an "axiomatic judicial assumption" had developed between the year 1932, when *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) was decided, and 1967, when the stewardship of William F. Washington's trial counsel was under review before our supreme court. That axiomatic assumption was that any right of representation in a criminal case includes the right to "effective" or "adequate" representation. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. at 601, 235 A.2d at 351. And the supreme court granted allocatur in the *Washington* case "to explore a facet of the right to effective representation." *Id.* Thus, even the inception of effective representation in a criminal context was not premised upon an axiom but rather constructed after careful consideration of whether such a standard furthered the objectives of the criminal process.

In the case now before us, all would agree that a juvenile has a due process right that any hearing in which the juvenile's liberty is implicated must comport with fundamental fairness. The difficult task is giving content to that due process right. I differ from the majority in that I earnestly believe that the right to fundamental fairness for Brandon Smith can readily be guaranteed, applying the broad scope of review suggested by Judge Tamilia, and without resort to any criminal process standards.

The only substantive issues presented on this appeal—apart from the attempt to create an effectiveness procedure for juveniles—involve (1) non-suppression of the allegedly

improper in-hospital identification following an allegedly illegal arrest (2) the non-introduction of allegedly exculpatory eyewitness testimony, and (3) the non-impeachment of certain Commonwealth witnesses with supposedly prior inconsistent statements. I conclude that none of these issues give rise to a claim of fundamental unfairness.

At issue 1, I agree with the majority that Smith's arrest could not have been suppressed, *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 506 A.2d 415 (1986) and that the trial judge's finding that an independent basis existed for making an in-court identification precludes our having to further review the hospital identification. The claims regarding the legality of the arrest and the suppression of Smith's identification by Stewart are without merit.

At issue 2, I agree with the Commonwealth that the testimony of David Brinson–Glover, *if* helpful to the juvenile, would have been cumulative and that its non-admission in no way prejudiced Smith. On appeal, Smith relies upon the contents of a police report to suggest that he was not the shooter. The Brief for Appellant converts the written statements of the police officer in the report into "testimony" of Brinson–Glover. There is no suggestion in the Brief that Brinson–Glover would, in fact, have testified in specific support of Smith, if called as a witness, or that he was in any way prevented from testifying by the state. Smith *did* testify, denied shooting Stewart and said he was elsewhere at the time of the crime. Alibi witnesses confirmed Smith's account. Bernard Johnson testified that he had seen the shooting, that Smith was at the scene but that the shooting was done by some other person. My review of the entire record satisfies me that issue 2 does not give rise to a viable due process claim.

At issue 3, both the Commonwealth and the majority recognize that the testimony of Bernard Johnson was favorable to Brandon Smith. I agree with them that it makes absolutely no sense to argue, as does Smith on this appeal, that trial counsel should have attempted to impeach this

witness. This clearly falls short of implicating fundamental fairness.

It has been said, "If it ain't broke, don't fix it!" This appeal can readily be determined consistent with Brandon Smith's rights without resort to criminal law precepts. I refuse to believe that our legislature intended to equate a statutory right to representation in civil juvenile proceedings with the constitutional right to effective assistance of counsel erected over many years through our criminal jurisprudence. I therefor dissent.